**HOOVER EQUIPMENT COMPANY, a Corporation, Petitioner,**

v.

**The BOARD OF TAX ROLL CORRECTIONS OF ADAIR COUNTY et al., Respondents.**

**No. 42609.**

Supreme Court of Oklahoma.

Dec. 12, 1967.

Rehearing Denied Jan. 30, 1968.

Franklin, Harmon & Satterfield, Oklahoma City, for petitioner.

G. T. Blankenship, Atty. Gen., of Oklahoma, Brian H. Upp, Asst. Atty. Gen. for defendants.

Robert L. Wheeler, Esq., Walker & Watson, R. Y. Empie, Oklahoma City, amicus curiae.

LAVENDER, Justice.

This is an original action for a writ of mandamus to compel the respondents to strike petitioner's name from the tax rolls of various counties named. Petitioner contends that certain road building and maintenance equipment has been assessed to it as "owner" when in fact it sold these machines to the counties involved. The alleged "sale" was made, petitioner says, by virtue of Title 62 O.S.1961, §§ 430.1 to 430.-5, inclusive.

The question for determination by the court will be whether a transfer of possession of personalty from a lessor to a county or unit of government under the circumstances provided for by the cited statute establishes the unit of government as the "owner" of such chattels for the purposes of taxation. If such question is answered in the affirmative, then such property would perhaps be exempt from taxation pursuant to Section 6 of Article X of the Oklahoma Constitution. The precise question, however, of whether such property is exempt is not necessary to be determined here. There is no attempt to levy upon the property except as against petitioner as "owner" thereof. The wording of the constitutional provision may be helpful, however, in determining what must be the interest of the unit of government in the

property before such may be considered as exempt.

We are of the opinion that the constitutional provision is clear. Said Section 6 of Article X provides in part as follows:

"All property used for free·public libraries, free museums, public cemeteries, property used exclusively for schools, colleges, and all property used exclusively for religious and charitable purposes, and all property of the United States, and of this State, and of counties and of municipalities of this State; * * * shall be exempt from taxation: * * *"

■ We are concerned with whether the exemption of "* * * all property of the * * * counties * * *," means that such property must be owned by the county. We hold that it does.

■ Petitioner has cited several cases which tend to hold that it is the use to which the property is being put on the assessment date that governs whether it is covered by the above quoted exemption. We are not concerned with such cases here. As we have held that the exemption provision requires that such property be owned by the county before it shall be exempt from taxation, the use to which such property is being put is immaterial. State ex rel. City of Tulsa v. Mayes, County Treasurer, et al., (1935), 174 Okl. 286, 51 P.2d 266; City of Hartshorne et al. v. Dickinson, (1952), 207 Okl. 305, 249 P.2d 422; Sublett v. City of Tulsa et al., (1954), Okl., 405 P.2d 185.

■ Before considering the case further, we pause to note that both petitioner and respondent have requested us to assume jurisdiction of this matter for the purpose of answering the public question involved—namely, whether property in the possession of a county pursuant to an agreement entered into under 62 O.S.1961, §§ 430.1 to 430.5, inclusive, is property "of" the county—that is, "owned by" the county —and therefore not subject to assessment to the lessor thereof.

■ We determine such question to be of sufficient statewide interest and concern to warrant our assumption of jurisdiction for the purpose of answering such question.

We notice petitioner contends as an additional ground for relief that prior to the date such property became subject to tax, petitioner assigned all of its interest therein to varous state and national banks. Assuming that such is true, we do not see in this any question of general public concern which would form the basis for the granting of extraordinary relief. Petitioner, it seems to us (if such are the facts), is in no different position than is every other person, firm, or corporation which does not own or claim to own property assessed in his or its name. We believe that such petitioner should be left to its usual and ordinary remedies. However, if we should find that the property is or was the property "of" the respective counties involved, then of course the assessment of the property for taxes against any other parties would appear to be not warranted.

It is appropriate to note at this point the pertinent tax statutes of Oklahoma which authorize the imposition of an assessment for ad valorem taxation upon personal property are as follows:

68 O.S.1961 as amended by 1965 Supp. § 2404:

"All property in this State, whether real or personal, except that which is specifically exempt by law and except that which is relieved of ad valorem taxation by reason of the payment of an in lieu tax, shall be subject to ad valorem taxation."

and,

68 O.S.1961, § 2426 as amended by 1965 Supp.:

"(a) Property subject to ad valorem taxation shall, unless otherwise provided, be listed for taxation by the owner thereof or his duly authorized agent."

By other statutory provisions such property is properly taxable in the county

wherein the same is actually located on the first day of January of each year.

Regarding the question of whether the county was the "owner" of the articles on the date the same became subject to the questioned assessments, respondent takes the position that the legal relationship created by each of the contracts entered into under 62 O.S.1961, §§ 430.1 to 430.5, inclusive, was strictly a lessor-lessee relationship with the petitioner as lessor and the county as lessee. If such be the case, of course the county did not become the "owner" of the property by virtue of such contract.

The petitioner, on the other hand, contends in effect that regardless of the legal and technical interpretation of the contract the county was the "owner" of the equipment for tax purposes at least, because it had the exclusive possession and the right to make full use of the property to the same extent as if it were the outright owner thereof, and when one considers that, coupled to the right of possession, the county also had exclusive right to become the purchaser of the property, one may reasonably conclude that for the purpose of taxation the county was the owner. Petitioner relies on what appears to be the majority of cases from other jurisdictions, to the effect that when a state statute (such as ours) requires property be assessed against owner,

"* * * it means the general and beneficial owner—the person whose interest is primarily one of possession and enjoyment in contemplation of an ultimate absolute ownership—and not the person who retains the legal title and does not contemplate the use or enjoyment of the property as such but holds his title primarily as the means of enforcement of the payment of the balance of the contract price." General Electric Credit Corp. v. Andreen, (1958), 74 Nev. 199 326 P.2d 731.

and see also Bowls v. Oklahoma City et al., (1909), 24 Okl. 579, 104 P. 902; Carroll v. Safford, 3 How. 441, 11 L.Ed. 671; (these cases dealt with real property but apparently are analogous under our taxing statute, 68 O.S.1961, § 2404 as amended by 1965 Supp., supra.) For similar views see Municipal Acceptance Corp. v. Canole, (1938), 342 Mo. 1170, 119 S.W.2d, 820, and State v. White Furniture Co., (1921), 206 Ala. 575, 90 So. 896 and 116 A.L.R. 325.

In Wells et al. v. Mayor, etc., of City of Savannah et al., (1891), 87 Ga. 397, 13 S. E. 442, it was said:

"* * * The value of property consists in its use, and he who owns the use forever, though it be on condition subsequent, is the true owner of the property for the time being. * * *"

Petitioner calls our attention to the provisions of Title 12A O.S.1961, § 1–201 which defines a "security interest" as:

"an interest in personal property or fixtures which secures payment *or performance* of an obligation. * * *" (emphasis supplied)

and,

"* * * Whether a lease is intended as security is to be determined by the facts of each case; however, * * * (b) an agreement that upon compliance with the terms of the lease the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."

Petitioner argues that the above line of cases when considered in conjunction with the above quoted portion of our uniform commercial code should cause us to conclude that a) the county was the beneficial owner of the equipment, and b) the only interest of the petitioner was a "security" interest—that is, an interest which would secure to it the payment by the county of the installments as they become due or the return of the merchandise and a retention by the petitioner of all installments as and for rental of such equipment.

It seems to be admitted by the respondents that if the county, by entering into the

contract and assuming dominion over the equipment, becomes legally obligated to pay the purchase price therefor, then the fact that legal title was retained by the lessor during the pendency of the contract could not prevent the property from becoming "owned" by the county for the purposes of taxation. However, respondents argue, the county did not become obligated to purchase the equipment or to pay the purchase price therefor, but only agreed to rent or lease the equipment on an annual basis, which lease would have to be annually renewed and could be terminated at the county's option on any anniversary date of said lease. That the absence of an obligation on the part of the county prevents the passing to it of an interest in the property sufficient for tax purposes.

Respondents point out that counties under such arrangements as here are forbidden by Article X, Section 26 to obligate future income and revenues beyond that of the current year and that it was for the purpose of permitting counties and others to purchase equipment on the "installment plan" that 62 O.S.1961, §§ 430.1 to 430.5, inclusive, was enacted by the Legislature.

It is respondents' further contention that none of the cases cited by petitioner wherein the "beneficial use—ownership for taxes purpose" theory was expounded involved situations similar to our problem here—that in each of those cases there was an "obligation" on the part of the vendee to pay for the equipment and thus a sale occurred which passed at least an equitable title to the property sufficient for tax purposes. Even in Municipal Acceptance Corp. v. Canole, supra, which at first reading would seem to support petitioner's theory, there was an "obligation" upon the part of the municipality—which was not in violation of their budgetary laws—and which supported the theory that the vendee became the "owner" for tax purposes. The "obligation" in that case was to pay for the equipment out of the "savings" which would be effected by its use. We

do not deem such case to be persuasive on the point before us.

We believe that the contract contemplated and authorized by the provisions of 62 O.S.1961, § 430.1 et seq. is similar to the lease-purchase contract in Automatic Voting Machine Corp. v. Maricopa County, (1937), 50 Ariz. 211, 70 P.2d 447, 116 A.L.R. 320. We do not agree with petitioner's argument that the last mentioned case is distinguishable because Arizona did not have a statute authorizing such contracts of lease-purchase. We are not concerned so much with the "authority" to enter into such an arrangement, which seems to exist independently of statute, as we are with the constitutional limitations which prevent an indebtedness by a unit of the government except under certain restrictive circumstances not here involved.

 It is elementary that the statute under which the parties entered into this contract became a part of it. That statute regarding the right of the lessee-county to relieve itself from obligations in connection with the purchase of the equipment provides: (430.1, supra)

"* * * When any machinery or equipment has been leased or rented during any fiscal year under any contract which permits continuance of such rental for the remainder of such fiscal year, the renting or leasing thereof must be continued for the remainder of said fiscal year *unless* the governing body renting or leasing the same, by proper resolution entered in the minutes of said governing body shall certify that the continuance of such rental is unnecessary and contrary to the public interest." (Emphasis supplied)

We have examined the authorities submitted by both petitioner and respondents. We have also conducted an independent study and we have not discovered any case law or text which would support the rule which the petitioner would have us declare to be the law of this jurisdiction.

In the first place, the purpose of the "retention" of legal title by the lessor could

**650**

not be, in view of the constitutional prohibition, to "enforce" payment for the merchandise or the "performance" of an "obligation" on the part of the county. Regardless of the statute and/or the written agreement between the parties, it was in effect constitutionally impossible for the county to be "obligated" to pay the purchase price for the equipment at the time the equipment became subject to assessment for ad valorem tax unless in the meantime and before that date the county had become legally obligated to pay the remaining unpaid portion of the purchase price. We have not been advised whether any of the contracts involved here had, by the assessment date in question, become a legally binding obligation upon the county to complete the payment of the "purchase price" stated therein. As for the period prior to the accrual of such an obligation, we simply hold that the county, during that time, was not the "owner" of the equipment for the purposes of taxation.

) For authority holding "where the transaction does not amount to a binding contract of purchase, the prospective purchaser is not taxable with respect to the land," see the Wyoming case of Olds, County Treasurer, v. Little Horse Creek Cattle Co., (1914), 140 P. 1004; 84 C.J.S. Taxation § 98.

We are of the opinion that the Writ of Mandamus should be denied. We express no view concerning the other question presented by petitioner which concerns petitioner's claim that it does not in fact own the property because it has conveyed all of its interest to another. For reasons heretofore given, we leave petitioner to its remedies at law which appear adequate.

Writ denied.

JACKSON, C. J., IRWIN, V. C. J., and WILLIAMS, HODGES, and McINERNEY, JJ., concur.

DAVISON and BLACKBIRD, JJ., concur in result.