COMMISSIONERS OF LAND OFFICE — APPROVAL OF LOANS — INTEREST RATES The Commissioners of the Land Office may not approve a loan at the lower rate of interest if the loan is approved by the 63. Further, if an application for a farm loan is received in the office by departmental employees prior to statutory change to a higher rate of interest, the applicant is not entitled to receive a loan at the lower rate of interest if the loan is approved by the Commissioners of the Land Office after the effective date of the higher rate of interest. Any such loan agreements not in strict conformity with the statutory provisions of 64 O.S. 52 [64-52](c) (1975) are illegal and thereby void. The Attorney General is in receipt of your request for an opinion wherein you ask the following questions: "1. May the Commissioners of the Land Office approve a loan prior to the appraiser's report required in 64 O.S. 63 [64-63] (1971)? "2. If an application for a farm loan is received in the office by departmental employees, prior to statutory change to a higher interest rate, is the applicant entitled to receive a loan at the lower rate of interest if the loan is approved by the Commissioners of the Land Office after the effective date of the higher interest rate? "3. If the answer to the second question is in the affirmative, would the Commissioners of the Land Office be prohibited by law from charging the lower rate of interest on any loan application approved by the Commissioners of the Land Office after the effective date of the higher interest rate? "4. If the answer to the second and third questions are in the affirmative, would the Commissioners of the Land Office be estopped from charging the higher rate of interest if a departmental employee inadvertently, through error and mistake, and without authority from the Commissioners, issued note and mortgage instruments to an applicant at the lower rate of interest if a loan was approved by the Commissioners of the Land Office after the effective date of the higher interest rate, even though the application was received prior to the effective date of the change of interest rate? "5. If through inadvertence, error and mistake, the Commissioners note and mortgage papers at a rate of interest different from the current legal rate were sent to a loan applicant and if the Commissioners erroneously advanced a certain sum of money to the applicant at an illegal interest rate, and if the mortgagor refused to execute a note and mortgage at the proper legal rate of interest, would the contract between the Commissioners of the Land Office and the mortgagor constitute a valid binding, enforceable contract?" In response to your first question, 64 O.S. 63 [64-63] (1971) provides that: "Before any loan shall be finally approved by the Commissioners of the Land Office, they shall have taken before them the information furnished by the Departmental Appraiser; . . ." If the language of a statute is clear and unambiguous in its terms, there is no room for construction and the statute's evident meaning must be accepted. See McVicker v. Caddo County Board of Commissioners, Okl., 442 P.2d 297
(1968). Therefore, your first question should be answered in the negative. In response to your second question, consideration must be given to 64 O.S. 52 [64-52](c) (1971) which specified a six percent (6%) interest rate and 64 O.S. 52 [64-52](c) (1975) which was amended in 1974 to provide for a seven and one-half percent (7 1/2%) rate of interest. The particular language of the latter statutory provision is as follows: "All farm loans made by the Commissioners of the Land Office of the State of Oklahoma from the trust funds under their jurisdiction and control, as otherwise provided by the laws of this state, shall bear interest at the rate of seven and one-half percent (7 1/2%) per annum, payable annually or semi-annually, until paid. . . ." (Emphasis added) This statute appears to give no discretion to the Commissioners as to the rate of interest which must be charged on any farm loan which is made by the Commissioners; the language is mandatory. Further, subsection (1) specifically provides for loans which were approved prior to the effective date of this act, stating: "The terms and provisions of this act providing for making of loans shall not prevent or prohibit the Commissioners of the Land Office from making loans which are approved prior to the date this act becomes effective under the rules and regulations prescribed by the Legislature as existed on the date said loans were approved." No reference is made to, nor provision is made for, applications made prior to the effective date of the act. When a citizen makes an application for a farm mortgage loan pursuant to 64 O.S. 51 [64-51] and 64 O.S. 52 [64-52] (1971), he offers his farm or ranch land as security. By statutory authority conferred by 64 O.S. 52 [64-52](f) (1971), departmental appraisers then inspect the property to determine its suitability for security and its market value. Pursuant to 64 O.S. 52 [64-52](d) (1971), the appraiser's report and the citizen's loan application are presented to the Commissioners of the Land Office for approval. At which time the terms and conditions of the loan contract are settled, an offer to make a loan in an amount based upon the appraisal and conditioned upon proof of merchantable title to the security being offered may be made to the applicant. At no point in the requisite procedural steps can it be said that the loan has been approved by the Commissioners. If the Legislature had intended that the seven and one-half percent (7 1/2%) rate of interest not apply to any application for a farm mortgage loan made prior to the effective date of the amended law, it would have so specified in said amendment. Indeed, Legislative intent can be seen from the express language of 64 O.S. 52 [64-52](1) (1975) wherein loans approved prior to the law's effective date were to be governed by the laws as they existed on the date the loans were approved. Furthermore, the procedures in making loans effective is set forth in 64 O.S. 52 [64-52](f) (1975) which states in part as follows: "When an application for a loan is filed and a deposit made of the required fees, the application shall be referred to an appraiser who shall view and appraise the land and improvements thereon and make his report to the Commissioners, setting forth the value of the security offered, together with his estimate of the annual rental value thereof, and his recommendations as to the necessary steps that should be taken to protect said land from erosion, wastage, and depletion, and such additional information as the Commissioners may require. If the report shows the security to be of sufficient value, said report shall be considered by the Commissioners at their next meeting following the filing of said report, and they shall either approve or reject said application; . . ." In accordance with these procedures, the Commissioners of the Land Office are committed to loan money only after approval of an application by vote of the Commissioners. This procedure is, of course, still subject to title examination, et cetera, but the commissioners would be, as above-indicated, without authority to approve a loan application for an amount less than the statutorily required interest on and after the date that interest rate becomes legally effective. It would therefore appear that your second question should be answered in the negative. Those loan applications received but not approved prior to August 16, 1974, were subject to the statutory rate of interest prescribed in 64 O.S. 52 [64-52](c) (1975), that of seven and one-half percent (7 1/2%). Since your second question was answered in the negative, your third and fourth questions need not be answered. In response to your fifth question, 64 O.S. 52 [64-52] (1975) establishes certain requirements which must be met with regard to investments in farm mortgages. Subsection (j) provides that the Commissioners of the Land Office have the duty to authorize and approve all loans made, and that such must be done in strict conformity to this act. Since subsection (c) prescribes a mandatory interest rate on all farm loans of seven and one-half percent (7 1/2%), the Commissioners are only authorized to approve loans at that specified rate of interest. No discretion is given to the Commissioners to enter into such a loan in any manner other than that specified in the statute. It is a well-settled principle that a contract made in violation of the law is illegal and void Lachman v. Sperry-Sun Well Surveying Co. C.A. Okl., 457 F.2d 850 (1972) and an obligor is not compelled to perform contractual terms when to do so would be contrary to law Sinclair Oil Gas Co. v. Bishop, Okl., 441 P.2d 436 (1967). Further, validity of a contract is determined by the law in force when the contract is made effective Tom P. McDermott, Inc. v. Bennett, Okl., 395 P.2d 566 (1964) and a statute under which the parties entered into a particular contract becomes a part of said contract Hoover Equipment Co. v. Board of Tax Roll Corrections of Adair County, Okl.,436 P.2d 645 (1967). Contracting parties are presumed to enter into a contract in reference to the existing law and all applicable statutes in existence at the time of the contract become part of it. See Sinclair Oil Gas Co. v. Bishop, supra. It is, therefore, the opinion of the Attorney General that your first, second, and fifth questions be answered in the negative and that your third and fourth questions need not be answered. The Commissioners of the Land Office may not approve a loan prior to the appraiser's report as required by 64 O.S. 63 [64-63] (1971). Further, if an application for a farm loan is received in the office by departmental employees prior to statutory change to a higher rate of interest, the applicant is not entitled to receive a loan at the lower rate of interest if the loan is approved by the Commissioners of the Land Office after the effective date of the higher rate of interest. Any such loan agreements not in strict conformity with the statutory provisions of 64 O.S. 52 [64-52](c) (1975) are illegal and thereby void. (JAMES H. GRAY) (ksg)