Dear Representatives Benson,
¶ 0 The Attorney General has received your request for an official opinion asking, in effect:
1. If the State of Oklahoma, a county, a school district or amunicipality, as lessee enters into a lease-purchase contract forpersonal property with a lessor and the lease contains anend-of-lease purchase option with a nominal price and the lessorretains title to the personal property during the lease term forsecurity purposes only, is the lessor liable for Oklahoma advalorem taxes on such property?
2. If the State of Oklahoma, a county, a school district or amunicipality, is legally unable to enter into contracts extendingbeyond the current fiscal year such that all contracts describedin the preceding paragraph must contain a non-appropriationclause, is the lessor, as a matter of law, the owner of thepersonal property leased by it for purposes of ad valoremtaxation?
 I. INTRODUCTION
¶ 1 The heart of your questions necessarily turns upon the issue of who should be treated as the owner of personal property subject to an existing contract, where the party in possession is a state or local government entity. This follows from the interplay between two general statutory rules. The first is that all such property is subject to ad valorem taxation, except where specifically exempt by law. 68 O.S. 2404 (1981). The second is that property owned by the state or political subdivisions is specifically exempt from such tax. 68 O.S. 2405(b) (1981). If property subject to the kind of contract described in your question is owned by the State or a political subdivision, no one pays ad valorem taxes on it. If it is not, whoever owns it pays the tax.
¶ 2 Regrettably, it is the very kind of contract you describe which can often create the most difficult factual controversies relating to the question of ownership. Such factual disputes are not subject to analysis in an official opinion of the Attorney General. It remains to be seen, therefore, whether your questions, or some part of them, may nonetheless be resolved as a matter of law.
 II. DEFINITION OF TERMS
¶ 3 Before it is even possible to begin an examination and analysis of the issues presented it is necessary to settle on the meaning of several terms of art which are included in your questions and which also play a central role in the jurisprudence which provides the ultimate answers.
 A. Lease-Purchase Agreement
¶ 4 The term "lease-purchase," used in your questions, is used, though not specifically defined, at 74 O.S. 85.4 (1988) which provides:
 G. No state agency shall enter into a lease-purchase agreement if title is acquired to tangible property of any class or nature by making lease, rental, or any other type payments, except as specifically authorized by law or by a governing board of regents as to institutions within The Oklahoma State System of Higher Education and except insofar as data processing equipment or other equipment is concerned; provided, however, the lease-purchase of data processing or other equipment by any state agency, whether or not such agency is subject to the provisions of the Oklahoma Central Purchasing Act, shall be processed by competitive bids through the Purchasing Division of the Office of Public Affairs.
 H.1. No change order or addendum can be made to a lease-purchase agreement for data processing or other equipment which extends the term or life of the original bid contract. Any lease-purchase agreement requiring such extensions or refinancing shall be readvertised and processed for competitive bids through the Purchasing Division of the Office of Public Affairs.
 H.2. All agencies, whether or not such agency is subject to the provisions of the Oklahoma Central Purchasing Act, shall prepare a list of all tangible personal property which it is acquiring by a lease-purchase method and, prior to the renewal of a lease-purchase agreement, shall evaluate the rate being paid under the current lease-purchase agreement against rates currently being received by the Purchasing Division of the Office of Public Affairs on a competitive bid basis to determine whether or not refinancing of the property will benefit the state. Any agency which elects not to submit a requisition for a possible refinancing when the existing rates are at least one percent (1%) above rates being currently bid, and when the total sum to be paid for the property including principal and interest will be reduced, must submit a written justification to the Purchasing Director stating the reasons for not attempting to refinance the property. The Purchasing Director shall forward all such justifications to the Chairman of the Senate Appropriations Committee and the Chairman of the House Committee on Appropriations and Budget no later than February 1 of each year.
¶ 5 Note that the foregoing statutory provisions are applicable only to "lease-purchase" contracts made by agencies of state government, and not to such contracts entered into by political subdivisions such as counties, school districts and municipalities. 74 O.S. 85.2(1) (1988). However, there is specific statutory mention of "lease-purchase" contracts made by such governmental subdivisions, though again without specific definition of the term, at 62 O.S. 430.1 (1988), which provides:
 The governing board of any county, city or town, or school district is authorized to rent on a monthly basis real property or equipment as authorized by the governing board and to pay the rental charges thereon for usage during any fiscal period, or portion thereof, out of appropriations made and approved for such purposes for, or during, such fiscal year. Any such rental contract extending beyond June 30 of the fiscal year shall be wholly void and of no effect unless it contains the provisions for mutual ratification of renewal under the conditions provided in this section. It is the purpose of this act to authorize such governing boards to enter into lease and lease-purchase contracts but not to incur any obligation upon the part of their respective municipal or governmental subdivisions in excess of the income and revenue thereof provided, for such purposes for the fiscal year in which the lease contract is effectively operative. Any agreement to lease and purchase real property or equipment, where title is to be acquired by the municipal or governmental subdivision, shall state the purchase price of the real property or equipment so leased and in no event shall the lease be extended so as to cause payment of more than the stated purchase price of the real property or equipment plus interest not to exceed ten percent (10%) simple interest on the unpaid balance due as of each payment date. When the purchase price plus interest has been paid the property shall belong to the lessee and the lessor shall deliver a bill of sale to the property to the lessee. The payment for the lease or rental of real property, machinery and equipment shall be made only from annual and supplemental appropriations specifically designated for such purpose, and no appropriation for the purpose of paying rentals on real property, machinery and equipment shall be transferred or diverted to any other purpose, except as may be authorized by the terms of the agreement or by law. When any real property, machinery or equipment has been leased or rented during any fiscal year under any contract which permits continuance of such rental for the remainder of the fiscal year, the renting or leasing thereof shall be continued for the remainder of the fiscal year unless the governing body renting or leasing the same, by proper resolution entered in the minutes of the governing body, shall certify that the continuance of such rental is unnecessary and contrary to the public interest.
¶ 6 The first of the two statutes quoted above provides some general governance of "lease-purchase" contracts entered into by agencies of state government, and the second covers most other governmental bodies in this state. As noted, however, neither of these statutes directly defines the meaning of the term "lease-purchase" other than by oblique, partially descriptive reference.
¶ 7 On the other hand, your question includes a number of factual presumptions which suggest your intended definition of the term "lease-purchase" for purposes of the issue at hand. You make specific reference to an "end-of-lease purchase option with a nominal price" and specify that the "lessor retains title to the personal property during the lease term for security purposes only." This permits the meaning of the team "lease-purchase" to be examined, for purposes of your questions, by reference to general provisions of the Uniform Commercial Code, specifically12A O.S. 1-201(37) (1988) which defines the term "security interest" for purposes of the Code, and discusses when a lease is deemed to be a mere "security interest."
¶ 8 Until recent amendments to the Uniform Commercial Code took effect on November 1, 1988, it was fairly easy to conclude that the kind of contract described in your questions constituted merely a lease intended as security, because the Code provided, at 12A O.S. 1-201(37)(b) (1984), that "an agreement that, upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security."
¶ 9 Determination of whether a given transaction is a "lease intended for security" is central to the factual question of ownership, at least where the parties to the transaction are not governmental bodies, because under such a lease the lessor retains no title, but merely possesses a lien. See, ConsolidatedEquipment Sales, Inc. v. First State Bank Trust Co. ofGuthrie, 627 P.2d 432, 434-435 (Okla. 1981). Other things being equal, a governmental lessee under the terms of a "lease intended for security" would necessarily be the owner of property subject to the lease, which would not then be subject to ad valorem taxation. Likewise, where a lease is not intended for security, but is instead what might be called a "true lease," the lessor remains the owner of the property for tax purposes, and would be taxed, or not, depending upon whether it constituted a tax-exempt governmental body. Oklahoma Industries Authority v. Barnes, 59 O.B.J. 2457, reh. pending (Sept. 20, 1988).
¶ 10 However, the legislature substantially amended the Uniform Commercial Code in 1988 and the amendments have somewhat complicated the problem of determining whether a given contract is actually a "lease intended for security." The pertinent language of the Code's definition of "security interest," now found at 12A O.S. 1-201 (1988), provides that:
 (b) Whether a transaction creates a lease or security interest is determined by the facts of each case; however, a transaction creates a security interest if the consideration the lessee is to pay the lessor for the right to possession and use of the goods is an obligation for the term of the lease not subject to termination by the lessee, and;
 (i) the original term of the lease is equal to or greater than the remaining economic life of the goods,
 (ii) the lessee is bound to renew the lease for the remaining economic life of the goods or is bound to become the owner of the goods,
 (iii) the lessee has an option to renew the lease for the remaining economic life of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement, or
 (iv) the lessee has an option to become the owner of the goods for no additional consideration or nominal additional consideration upon compliance with the lease agreement.
 (c) A transaction does not create a security interest merely because it provides that:
 (i) the present value of the consideration the lessee is obligated to pay the lessor for the right to possession and use of the goods is substantially equal to or is greater than the fair market value of the goods at the time the lease is entered into,
 (ii) the lessee assumes risk of loss of the goods, or agrees to pay taxes, insurance, filing, recording, or registration fees, or service or maintenance costs with respect to the goods,
 (iii) the lessee has an option to renew the lease or to become the owner of the goods,
 (iv) the lessee has an option to renew the lease for a fixed rent that is equal to or greater than the reasonably predictable fair market rent for the use of the goods for the term of the renewal at the time the option is to be performed, or
 (v) the lessee has an option to become the owner of the goods for a fixed price that is equal to or greater than the reasonable predictable fair market value of the goods at the time the option is to be performed.
(d) For purposes of this subsection:
(i) additional consideration is not nominal if:
 (A) when the option to renew the lease is granted to the lessee the rent is stated to be the fair market rent for the use of the goods for the term of the renewal determined at the time the option is to be performed, or
 (B) when the option to become the owner of the goods is granted to the lessee the price is stated to be the fair market value of the goods determined at the time the option is to be performed. Additional consideration is nominal if it is less than the lessee's reasonably predictable cost of performing under the lease agreement if the option is not exercised;
 (ii) "reasonably predictable" and "remaining economic life of the goods" are to be determined with reference to the facts and circumstances at the time the transaction is entered into; and
 (iii) "present value" means the amount as of a date certain of one or more sums payable in the future, discounted to the date certain. The discount is determined by the interest rate specified by the parties if the rate is not manifestly unreasonable at the time the transaction is entered into; otherwise, the discount is determined by a commercially reasonable rate that takes into account the facts and circumstances of each case at the time the transaction was entered into.
¶ 11 A contract made prior to the effective date of the 1988 amendments will be assessed on the question of whether it is a "lease intended as security" under the prior law, and one made later under the new law. However, for purposes of this opinion, it will be necessary to presume that any "lease-purchase" contract contemplated by your question, if entered into between private, non-governmental parties, would be considered a "lease intended as security" within the meaning of either version of the Uniform Commercial Code. The lessor would be a mere lienholder, the lessee would be considered the owner, and the property would be taxed, or not, according to the tax-exempt status of the lessee.
¶ 12 By means of this presumption numerous potential and irresolvable factual considerations may be avoided, and the analysis can move on to the question of whether the existence of additional factors, peculiar to the involvement of a governmental party to the contract, result in a different outcome on the question of ownership of the leased property.
 B. Non-Appropriation Clause
¶ 13 Your second question specifically refers to one such additional factor, a "non-appropriation clause." It is worth noting that neither 74 O.S. 85.4(G, H) (1988) nor 62 O.S.430.1 (1981) uses the term "non-appropriation clause," though these are the only statutes found which directly regulate "lease-purchase" contracts of equipment to governmental bodies. However, the latter does specifically discuss fiscal year limitations on expenditure which, as will be seen, is a related subject. No other statute has been found either which defines or even mentions the term "non-appropriation clause," and your questions do not define the term.
¶ 14 Fortunately, the recent decision from the Oklahoma Supreme Court in U.C. Leasing, Inc. v. State Bd. of Public Affairs,737 P.2d 1191 (Okla. 1987), specifically addresses the content and effect of such a "nonappropriation clause." U.C. Leasing
involved a dispute over the validity of a "true lease" rather than a "lease-purchase" contract, for a term of sixty months. Because the term of the lease extended over some five separate fiscal years, the State questioned its validity in light of the Oklahoma Constitution's limitation on debts of the State, which is found at Okla. Const., Article X, Section 23.
¶ 15 Although not specifically described as a "non-appropriation" clause, central to the Court's analysis inU.C. Leasing was language in the lease which provided that:
 Notwithstanding anything to the contrary contained herein, if the legislative body appropriating funds for Lessee does not allocate funds for the payment of a communications switching system for Oklahoma Criminal and Traffic Law Enforcement, the Lessee will not be obligated to pay the net total of periodic payments remaining on the lease beyond the then current fiscal period. Lessee agrees to notify CCS (Computer Control Systems, Inc.) of such nonallocation in writing at, the earliest possible time.
737 P.2d at 1194.
¶ 16 The Court viewed the existence of this contractual language as central to the question of the validity of the lease, saying:
 Did the State incur liability for the entire rental period prescribed in the lease agreement when the lease contract was made? We hold that it did not incur anything more than a potential liability as hereafter explained.
 While the lease agreement before us purports to bind an agency of the State for a term of 60 consecutive months from its inception the lease agreement explicitly provides that if the Legislature fails to allocate funds for payment, lessee is not obligated to pay rentals beyond the term for which funds have been allocated or in excess of such funds. Thus the obligation was not absolute and in all events binding upon the State at the time of its execution, but was made contingent upon continued funding on a fiscal year basis by the Legislature continuing to appropriate funds to satisfy the obligation.
737 P.2d at 1195.
¶ 17 The U.C. Leasing case thus permits a meaning to be ascribed to the term "non-appropriation" clause. Such a clause would consist of contractual language which makes a lease binding, during fiscal years after the year in which the lease commences, only upon the contingency of legislation being passed which appropriates funds sufficient to continue making lease payments.
 III. DETERMINING OWNERSHIP BY GOVERNMENTAL LESSEES A. Scope of Problem
¶ 18 As noted above, the question of ad valorem taxability turns upon the question of ownership. The problem, then, is to determine who would be deemed, as a matter of law, to be the owner, the lessor or lessee, or property subject to a particular "lease-purchase" contract, when the definitions and presumptions discussed above are taken into account. As discussed in the following sections, the answer and solution to this problem depends upon several factors, including the length of the period covered by the "lease-purchase" contract and whether the lessee is an agency of state government, on the one hand, or a political subdivision, on the other.
 B. Contracts Performed in a Single Fiscal Year or Otherwise Fully Funded
¶ 19 Though the actual event may be rare, it is at least theoretically possible for a state agency or local body of government to enter into a "lease-purchase" contract which, by its terms, would be fully per formed within the same fiscal year as it commences. In such a case it would be fully funded by existing appropriations. It is also the case that some appropriations are not subject to usual fiscal year limitations, and can continue as long as thirty months. A "lease-purchase" contract for more than one fiscal year might be fully funded by such an appropriation.
¶ 20 The validity of such a fully funded financing lease would not turn upon questions of constitutional debt limitation, since such limitations would not be implicated in light of the short term of the contract or the long term of the funding. If the lessee were a county, municipality or school district, most of the special requirements and limitations found in 62 O.S. 430.1
(1988), would not operate. Such a fully funded agreement would, then, be a valid "lease intended as security" within the meaning of the Uniform Commercial Code, 12A O.S. 1-201(37) (1988). The lessee would be the owner and the lessor a mere lienholder.Consolidated Equipment Sales, Inc. v. First State Bank TrustCo. of Guthrie, supra, 627 P.2d at 434-435. With ownership legally reposing in the state, a county, a school district or a municipality, the property would be exempt from ad valorem taxation. 68 O.S. 2405(b) (1981).
 C. Contracts Performed Over Multiple Fiscal Years 1. Political Subdivisions
¶ 21 Where the lessee is a county, municipality or school district, and full performance of the "lease-purchase" contract will require payments from appropriations for two or more fiscal years, the question of ownership of the leased property requires a different answer. Such a contract would be specifically controlled and limited by the terms of 62 O.S. 430.1 (1988). The terms of 62 O.S. 430.1 would necessarily become part of the terms of the contract, because "existing applicable law is a part of every contract, the same as if expressly referred to or incorporated in its terms." East Central Okla. Elec. Coop. v.Public Service Co., 469 P.2d 662, 664 (Okla. 1970).
¶ 22 It follows that among the terms of any such contract would be a requirement for "mutual ratification of renewal" each new fiscal year and a specification that "when the purchase price plus interest has been paid the property shall belong to the lessee and the lessor shall deliver a bill of sale to the property to the lessee." 62 O.S. 430.1 (1988).
¶ 23 The question of ownership, and therefore of taxability of property leased under such statutorily implied contractual terms was expressly addressed by the Oklahoma Supreme Court in the case of Hoover Equip. Co. v. Bd. of Tax Roll Corr. of Adair County,436 P.2d 645 (Okla. 1968). In Hoover Equipment the Court was asked to issue a writ of mandamus requiring that the lessor of certain property of various counties be stricken from the tax rolls of those counties, and addressed the same questions you now pose, in connection with property leased by a county from a private party, saying:
 The question for determination by the court will be whether a transfer of possession of personalty from a lessor to a county or unit of government under the circumstances provided for by the [predecessor statute to 62 O.S. 430.1 (1981)] establishes the unit of government as the "owner" of such chattels for the purposes of taxation. If such question is answered in the affirmative, then such property would perhaps be exempt from taxation pursuant to Article X, Section 6 of the Oklahoma Constitution.
436 P.2d at 646.
¶ 24 The Court then analyzed the nature of the county's obligation under its lease in light of 62 O.S. 430.1 as well as constitutional limits on the ability of the county to incur debt, concluding that it was:
 impossible for the county to be "obligated" to pay the purchase price for the equipment at the time the equipment became subject to assessment for ad valorem tax unless in the meantime and before that date the county had become legally obligated to pay the remaining unpaid portion of the purchase price. We have not been advised whether any of the contracts involved here had, by the assessment date in question, become a legally binding obligation upon the county to complete the payment of the "purchase price" stated therein. As for the period prior to the accrual of such an obligation, we simply hold that the county, during that time, was not the "owner" of the equipment for the purposes of taxation.
Hoover Equip. Co. v. Bd. of Tax Roll Corr. of Adair County,436 P.2d at 650.
¶ 25 The Court therefore concluded that it would not issue the writ of mandamus. The Court reached this conclusion despite the lessor's contention that its contract would be a "lease intended as security" if made between private parties, within the meaning of 12A O.S. 1-201(37) (1961), which is the Uniform Commercial Code's definition of "security interest," the most recent and current versions of which are discussed in Section II, supra.Id. 436 P.2d at 648.
¶ 26 As to counties, municipalities and school districts subject to 62 O.S. 430.1 (1981), nothing is found in the statutes or cases enacted or decided since Hoover Equipment to cast any doubt upon its continuing validity. Therefore, a "lease-purchase" contract which might be a "lease intended as security" if entered into between private parties, cannot be so considered where the lessee is one of those specified political subdivisions. The lessor of such property remains the owner of such property until the final fiscal year of any such lease contract, when the balance of the lease payments become a legally binding obligation upon the subdivision, and until that time, the lessor remains liable for ad valorem taxes on the property.
 2. The State and its Agencies
¶ 27 The authorities discussed in connection with political subdivisions do not clearly or directly indicate the answers to your questions for those "lease-purchase" contracts where the lessee is the State of Oklahoma or a state agency, however. For example, in connection with such state contracts, there is no statute analogous to 62 O.S. 430.1 (1981) which expressly provides that such contracts continue from year to year only if specifically ratified by the governmental party. The one statute that does speak in terms of state agency "lease-purchase" contracts, 74 O.S. 85.4(G-H) (1988) does not directly address the issue in the same manner as 62 O.S. 430.1.
¶ 28 Yet there is an implication in 74 O.S. 85.4(G-H) (1988) that such state agency contracts do not continue automatically from year to year as binding obligations of the State, but are subject to annual renewal by the government in the same or similar manner as are political subdivision contracts under 62O.S. 430.1. Specifically, 74 O.S. 85.4(H)(2) (1988) provides in pertinent part that:
 All agencies, whether or not such agency is subject to the provisions of the Oklahoma Central Purchasing Act, shall prepare a list of all tangible personal property which it is acquiring by a lease-purchase method and, prior to the renewal of a lease-purchase agreement, shall evaluate the rate being paid under the current lease-purchase agreement against rates currently being received by the Purchasing Division of the Office of Public Affairs on a competitive bid basis to determine whether or not refinancing of the property will benefit the state. Any agency which elects not to submit a requisition for a possible refinancing when the existing rates are at least one percent (1%) above rates being currently bid, and when the total sum to be paid for the property including principal and interest will be reduced, must submit a written justification to the Purchasing Director stating the reasons for not attempting to refinance the property.
¶ 29 Although somewhat indirect in expression, this language seems nevertheless to constitute a legislative recognition that an implied term of every state agency "lease-purchase" contract is a right on the part of the government to forego renewal and refinance the obligation or acquisition elsewhere at the end of each fiscal year. Like the provisions of 62 O.S. 430.1 which operate to like effect, such terms are necessarily implied in any contract to which the statute is applicable. East Central Okla.Elec. Coop. v. Public Service Co., supra, 469 P.2d at 664. Such a statutorily implied term is also consistent with the constitutional limitation on the ability of the State of Oklahoma to incur debt, found at Okla. Const., Article X, Section 23, as interpreted by the Supreme Court in U.C. Leasing, supra.
¶ 30 As noted above, the constitutional debt limit requires that state agency contracts which extend over multiple fiscal years must, in order to be valid, contain a "non-appropriation clause." The legal effect of such clause is that government's liability under the contract for future years is "not absolute and in all events binding upon the State at the time of its execution," but is "made contingent upon continued funding on a fiscal year basis by the Legislature continuing to appropriate funds to satisfy the obligation." U.C. Leasing v. State Bd. ofPublic Affairs, supra, 737 P.2d at 1195.
¶ 31 Comparing the position of the State to that of political subdivisions acting as lessees under "lease-purchase" contracts reveals a distinction, if not a difference in the nature of the liability of the respective bodies under the agreement. UnderHoover Equipment, a political subdivision is not "`obligated' to pay" for the future fiscal periods. Id. 436 P.2d at 650. UnderU.C. Leasing, a state agency has "potential liability" for such periods, which are "contingent upon continued funding."737 P.2d at 1195.
¶ 32 Whether this distinction requires a different result for the two classes of "lease-purchase" contracts can be resolved, however, by reference once more to the Uniform Commercial Code,12A O.S. 1-201(37)(b) (1988), which provides that whether a given transaction creates a lease or security interest may turn on whether it results in "an obligation for the term of the lease not subject to termination by the lessee." Id. Whatever uncertainty may exist in connection with the full meaning of the language and result in U.C. Leasing, one thing is clear: Multi-year contracts from private parties to state agencies which include "non-appropriation" clauses are subject to termination by the Legislature. Thus, when such contracts are "lease-purchase" contracts, it is reasonable to treat them under the Uniform Commercial Code as leases rather than security interests, to treat the non-governmental lessors as owners of the property leased for tax purposes and to tax that property.
¶ 33 This conclusion is especially compelling when it is considered that the result in Hoover Equipment was reached based on the interplay between the predecessor to 62 O.S. 430.1
(1981) and the constitutional limitation on local government debt, Okla. Const. Article X, Section 26. When construing the effect of 74 O.S. 85.4(G-H) (1988) in light of the nearly identical limitations on state debt found at Okla. Const. ArticleX, Section 23, it is appropriate to conclude that state agency "lease-purchase" contracts must be treated the same as similar local government contracts. The state and local constitutional/statutory schemes plainly deal with the same subject matter and should be interpreted to render them consistent and harmonious, if possible. Personal Loan FinanceCo. of Tulsa v. Okla. Tax Commission, 437 P.2d 1022 (Okla. 1968). Such consistency and harmony is possible here.
¶ 34 It is, therefore, the official opinion of the AttorneyGeneral that:
1. Where a "lease-purchase" contract between a private party aslessor and a state agency or political subdivision as lessee willbe fully performed within the then current fiscal year by thestate, a county, a municipality or a school district, under abinding obligation on the governmental lessee to fully performthe obligations of the contract within that fiscal year, thelessor holds merely a lien on such property and the governmentalbody is the owner of the property which is exempt, by virtue ofsuch governmental ownership, from ad valorem taxation, pursuantto 68 O.S. 2405(b) (1981).
2. Where a "lease-purchase" contract between a private party aslessor and a state agency or political subdivision as lessee isnot capable of complete performance within the then currentfiscal year, its validity during future fiscal years depends uponinclusion of a valid "non-appropriation clause." Under"lease-purchase" contracts containing "nonappropriation" clauses,which have not yet reached their final fiscal year ofperformance, the lessor is the owner of such property and thelessee has a mere possessory interest. Unless the lessor is a taxexempt entity, the property subject to such a contract is taxablefor ad valorem purposes to the lessor.
ROBERT H. HENRY ATTORNEY GENERAL OF OKLAHOMA
JAMES B. FRANKS ASSISTANT ATTORNEY GENERAL