**Ramona June CHARLES, Appellee,**

v.

**William Dean CHARLES, Appellant.**

**No. 61147.**

Court of Appeals of Oklahoma,
Division 4.

Dec. 10, 1985.

Gary D. Mallow, Gary D. Mallow, Inc., Grove, for appellee.

Ben Loring, Hall, Loring & Smith, P.C., Miami, for appellant.

BRIGHTMIRE, Presiding Judge.

The childless couple had married 26 years earlier. She had long been employed as an accountant for a credit association; he as a pipefitter at B.F. Goodrich Company. Through their joint efforts the parties had accumulated assets the value of which according to the woman was $95,826.14 and according to the man was $127,011.14. The difference of $31,185 was due mainly to the value placed on the residence property awarded to the woman. She had evidence

it was worth $39,000 and he had evidence it was worth $61,000.

The trial judge stated that it was his intention to equally divide the property between the parties. This objective he nearly attained except for the fact he gave the woman a judgment against the man for $19,500. Using figures most favorable to the woman the judgment resulted in the woman receiving $66,255.57 and the man $29,570.57. On top of this the man was ordered to pay the woman $750 for attorney fees and $500 a month alimony from November 30, 1982, to January 24, 1983, and $250 a month thereafter until May 11, 1983, a total of nearly $2,000.

In a second effort to get the trial judge to correct the obvious calculation error, which apparently formed the basis for the judgment, the man sought reconsideration of the order overruling his motion for new trial. The trial court's unfortunate reaction, however, was somewhat cavalier. Said he: "And I suppose if I've made a mistake, that's what we have appellate courts for!" Our response to this is that to avoid such a waste of judicial time as well as that of the litigants is what a motion for new trial is for. Given the fact that the trial judge found and concluded that a fair and equitable division of property under the circumstances of this case was an equal division, it was the trial court's responsibility to make the division and not delegate such duty to the appellate court. To invite a time and money wasting appeal under such circumstances is, to say the least, inappropriate.

We see no basis for the $19,500 judgment. The woman does not give any reason for it except to fall back on the court's discretion. As we see it the issue is not whether discretion was abused but whether the discretionary findings made and conclusions reached were correctly reflected in and consistent with the property division judgment rendered. We conclude they were not. The judgment of $19,500 should not have been rendered.

## I

In this case, however, there were three other errors made: (1) the temporary ordering of the man to pay alimony to the woman; (2) the ordering of the man to pay the woman's attorney fees; and (3) the purported contingent division of the man's unvested company retirement account which the court ordered to be divided if and when it vested in defendant two years later.

## II

With regard to the temporary alimony order the evidence fails to indicate a need for it.

We do not know what the judge was told who issued the ex parte order directing the man to pay $500 a month to the woman. But at the show cause hearing later on the woman admitted she had withdrawn some $5,500 from the parties' joint savings account prior to filing this lawsuit; that she was enjoying rent and mortgage payment free occupancy of the established homestead; and that her gross income was $16,130 and her take home, after deductions for her savings account (6%) and taxes, was in the neighborhood of $900 a month.

She evidently did not need the $5,500 for living expenses because she said she went out and spent $1,000 of it on a new T.V.; $400 on new clothes; $375 for a new microwave oven; $150 for Christmas presents; and gave $500 to her attorney. Evidently there were other expenditures because she said she had only $1,000 to $1,500 out of the $5,500 left at the time of the show cause hearing on January 12, 1983.

"Do you need that money to meet your living expenses?" the woman was finally asked in reference to the $500 a month temporary support order.

"Not living expenses," she replied.

Despite this admission and the absence of evidence that she needed any alimony the trial judge ordered the man to pay the woman $250 a month for support. It was an abuse of discretion.

### III

■ The attorney fee award was error for a similar reason. The woman was not destitute; she was not without suit money. Indeed she admitted she had already paid her lawyer $500 before she filed suit. Thus the attorney fee award in the temporary order was clearly unwarranted.

■ The final attorney fee award was also an abuse of discretion because, first of all, the issue of an attorney fee award was not among those the parties agreed on at pre-trial. Second, there was no evidence upon which the court could have based a conclusion that the woman could not pay her own attorney fee. And third, no evidence was presented as a foundation for determining what a reasonable fee for the woman's attorney amounted to as required by *State ex rel. Burk v. City of Oklahoma City,* 598 P.2d 659 (Okl.1979).

### IV

Finally we come to the man's complaint about the propriety of the court's awarding the woman "Fifty percent (50%) of the funds available in the B.F. Goodrich Retirement account when it vests to [sic] the defendant."

Underlying this issue are these facts. The 48-year-old man had been an employee of Goodrich for about eight years. He had a retirement account with the company to which he had contributed nothing, and contributions made by the company had not vested in him at the time of trial. Under company rules, rights in the fund would not vest in the man until he had worked for the company at least ten years. Even after vesting, the account was "frozen," that is, no funds were available to him until he reached the age of at least 60.

■ Under these facts the retirement fund was not acquired property, jointly or otherwise. There existed only the potential for "future acquired property" and the trial court is without authority to attempt a division of such unvested potential. 12 O.S.1981 § 1278; *Ettinger v. Ettinger,* 637 P.2d 63 (Okl.1981). Or looking at the fund

from a different perspective, the man had not yet acquired an interest in it and whether he would acquire an interest in the future depended on the fulfillment of a contingent precedent—remaining in the employ of B.F. Goodrich two more years. Division of even vested property subject to contingencies is unauthorized by law. 12 O.S.1981 § 1278; *Trosper v. Trosper,* 308 P.2d 320 (Okl.1957).

We hold that division of the retirement account was an error.

### V

The property division portion of the decree is therefore modified by deleting the $19,500 judgment against the man and the division of the man's B.F. Goodrich retirement account. The man is granted a judgment against the woman for $2,750—the amount he paid for her attorney fees and temporary support. The decree is otherwise affirmed. Each party shall pay one half the cost of this appeal and pay his or her own attorney fee. The cause is remanded with directions to enter a decree conforming to the foregoing conclusions and judgment.

Affirmed as modified.

RAPP, J., concurs, and STUBBLE-FIELD, J., concurs in part and dissents in part.

STUBBLEFIELD, Judge, concurring in part and dissenting in part.

I agree with that part of the majority opinion that vacates the award of temporary alimony and reverses the award of attorney fees. I, however, do not agree with the modification of the trial court's property division order.

I believe the figures used by the majority to justify the deletion of the $19,500 judgment, are erroneous. The property division amounts are reached by allowing a double credit to husband for the $19,500—deducting it from his property award and then adding it to wife's side of the ledger. More realistic figures would be $65,755 for wife

and $51,020 [1] for husband, and even this does not ·take into consideration various valuable tools, a coin collection, and antiques, all of which were granted to husband, but for which values were not established. Husband's testimony leaves the impression that the tools are quite valuable. Under the circumstances, I do not believe this property division to be inequitable, and I would affirm it.

I also disagree with that part of the majority opinion which vacates the award to wife of an interest in husband's non-vested contingent pension.[2] I do not believe the authorities cited by the majority prohibit such an award as was made by the trial court.

In *Carpenter v. Carpenter,* 657 P.2d 646, 651 (Okla.1983), the Oklahoma Supreme Court specifically addressed the issue of division of a contingent pension. The court said:

> "The practical problems inherent in 'dividing' a pension which is unmatured or contingent at the time of a divorce are resolved within the language of 12 O.S. 1981 § 1278 itself. It must be divided between the parties 'as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof.' The exigencies of a particular case can be best determined by the trial court, and unless the division of jointly acquired property made by the trial court in a divorce action is against the weight of the evidence and is inequitable, it will not be reversed or modified on appeal." (Citation omitted.)

I believe the division of the pension effected by the trial court is authorized by *Carpenter,* and I do not believe it is inequitable. I would affirm that portion of the trial court's award.

---

**1.** The only change in this figure from that given by husband in his brief is the value of his equity in a home purchased after the parties' separation. Husband had removed $39,000 from a Super Saver account upon his separation from his wife. He purchased a new home with $37,-000 applied as a down payment, and $2,000 for closing costs. It is reasonable to believe the trial court valued his interest as the entire $39,-000 marital assets invested.

**2.** The recent widely publicized closing of the Miami, Oklahoma, B.F. Goodrich plant, may render this issue moot. The closing was apparently prior to husband's completion of the period of employment needed to vest retirement benefits. Public pronouncements have been that no employees would be relocated or rehired.