Dear Senator Mickle,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
 1. Can a school district use the proceeds of general obligation bonds to make an annual installment payment under a lease-purchase agreement for buildings or equipment?
 2. Can a school district use general obligation bond proceeds to acquire certain portions of a building and equipment pursuant to a lease-purchase agreement whereby title to the leased property vests in the school district at the end of the lease term?
 3. Can a school district use general obligation bond proceeds to acquire portions of a building and equipment pursuant to a lease-purchase agreement whereby title to certain portions of the leased property vests in the school district annually as the school district makes each lease-purchase payment?
¶ 1 Your inquiry raises a fundamental question as to the proper use of school district bond proceeds, namely: can a school district "acquire" an interest in property through a lease-purchase agreement, within the meaning of Article X, § 26(a) of the Oklahoma Constitution, thus justifying the use of bond proceeds for this purpose?
¶ 2 Public school districts are authorized to rent or lease real and personal property on a fiscal year basis. 2002 Okla. Sess. Laws ch. 483, §§ 1(A), (B); 2(A)(7), (10); (B) (amending62 O.S. 2001, § 430.1[62-430.1] (A), (C); 70 O.S. 2001, § 5-117[70-5-117](A) (7), (10); (B)). Further, school districts are authorized pursuant to the Constitution, Article X, § 26(a) and 70 O.S. 2001, §15-101[70-15-101], to issue general obligation bonds[1] for debts or obligations extending past the current fiscal year, to "erect or purchase and equip a suitable school building" based on voter approval at an election held for that purpose. On proper showing of need, a school district may borrow up to 10% of the net assessed valuation of taxable property in the district "for the purpose of acquiring or improving school sites, constructing, repairing, remodeling or equipping buildings, or acquiring school furniture, fixtures or equipment[.]" Okla. Const. art. X, § 26(a) (emphasis added).
¶ 3 In Lone Star Gas Company v. Bryan County Excise Board,141 P.2d 83, 83 (Okla. 1943), the court set out three methods by which school districts may erect school buildings: (a) appropriate for the project within the current general fund; (b) issue bonds; or (c) use money from the district's building fund levied under Article X, Section 10. The court further observed that none of these methods is exclusive. An issue for consideration is whether leasing a building or equipment with the school district to obtain title upon making all required payments is a fourth method available under our Constitution.
 Lease-Purchase Financing Transactions
¶ 4 Lease-purchase agreements were first authorized by the Legislature in 1945, and have since been used by school districts, municipalities and counties in Oklahoma to obtain use of equipment and facilities for governmental purposes. 2002 Okla. Sess. Laws ch. 483, § 1(A) (amending 62 O.S. Supp. 2002, §430.1[62-430.1] (A)); see also Laws 1945, p. 154, § 1. So called "municipal lease financing" is now commonly used. The lowest-cost form of such financing is where interest on the lease is tax-exempt.[2] The basic reason for using a lease arrangement is to avoid the sometimes onerous debt limits of the Constitution. A lease calling for payments on a fiscal year basis, under which the governmental entity can terminate the agreement and "walk away" at the end of a given fiscal year, is not, for State law purposes, a "debt" under the Constitution.Halstead v. McHendry, 566 P.2d 134, 138 (Okla. 1977); In reOkla. Capitol Improvement Auth., 355 P.2d 1028, 1031 (Okla. 1960). Although the governing body of the lessee might feel a moral obligation to continue the lease past the current fiscal year, there is no legally enforceable obligation to do so, and therefore such an arrangement does not create "debt" in the constitutional sense, requiring voter approval and compliance with debt limitations. Halstead, 566 P.2d at 138.
¶ 5 Under the scenario you present, a district proposes to call an election and authorize more general obligation bonds than it has constitutional capacity to issue at that time.[3] Upon a favorable election outcome, the district also enters into a lease-purchase agreement under which the lessor agrees to provide a building, fixtures and/or equipment.[4] The underlying lease agreement provides (i) for annual lease installments (containing a component for interest); (ii) that the district may terminate the lease if the board of education does not appropriate necessary funds for the payment in a given fiscal year; and (iii) when all lease payments are made, the district will own the leased property, paying nothing further to obtain title. Subsequently, the district's board of education authorizes issuance and sale of bonds each year in an amount sufficient to make the annual lease payment, but within the debt limitation. Under these circumstances, a district with high capital needs, but with limited constitutional debt issuance capacity, may well find leasing an attractive means of obtaining needed facilities. Ultimately, the reason for such an arrangement is to avoid the 10% constitutional debt limit. But the premise is that the transaction is a lease, not a loan.[5]
¶ 6 It is not easy to distinguish between a lease and a conditional sales agreement (i.e., a loan). Where a "lease" agreement leaves bare legal title in the lessor, and the lessee has most of the other duties, liabilities and privileges of ownership, and is required only to pay a nominal sum at the end of the term, a secured transaction or installment sales contract is usually found as a matter of law.[6] The feature that saves a lease-purchase obligation of an Oklahoma school district or municipality from being construed as "debt" under the State Constitution is the provision allowing the lessee to terminate the agreement at the end of a given fiscal year by reason of non-appropriation. 2002 Okla. Sess. Laws ch. 483, §§ 1(C); 2(B) (amending 62 O.S. 2001, § 430.1[62-430.1] (C) and 70 O.S. 2001, §5-117[70-5-117] (B)).
¶ 7 Attorney General Opinion 98-28 examined at length the issue of whether a transaction is a lease or a secured sale. In this Opinion, the question was whether a private company, as lessee, was required to pay ad valorem taxes on property leased from a public trust. The court's decisions in Oklahoma IndustriesAuthority v. Barnes, 769 P.2d 115 (Okla. 1988) and State exrel. Cartwright v. Dunbar, 618 P.2d 900 (Okla. 1980), were examined and contrasted. In both the Barnes and Dunbar cases property was leased by a public trust to a private corporation, and the major issue was whether the lessee's interest was taxable. The lease in Dunbar allowed the lessee to obtain title at the end of the lease term by paying a nominal sum, resulting in a holding that the property was taxable to the lessee.Dunbar, 618 P.2d at 906, 910. In Barnes, no such nominal purchase price provision was in the lease, and the court held the property remained the property of the public trust for tax purposes. Barnes, 769 P.2d at 116, 121. Dunbar concluded the private company had complete possession and control of its property under executory contract to purchase, and "the only purpose for retention of title [by the public trust] is to secure payment of the `purchase price,' to wit, the rental payments to retire the outstanding bonds." Dunbar, 618 P.2d at 904. In other words, Dunbar illustrated a loan disguised as alease, whereby the lessor retained title only for security purposes.
¶ 8 The question of property ownership under a lease-purchase arrangement was also considered in Hoover Equipment Co. v. Boardof Tax Roll Corrections, 436 P.2d 645 (Okla. 1967). The issue in Hoover was also liability for property taxes on the leased property; the court held that property in a county's possession pursuant to a leasing agreement with option to buy authorized by 2002 Okla. Sess. Laws ch. 483, § 1(D) (amending 62 O.S. 2001, §430.1[62-430.1] (D)) is not "owned" by the county so as to be exempt from ad valorem property taxes until the county becomes legally
obligated to pay the purchase price, and the lessor is liable for payment of ad valorem property taxes before that time. Hoover,436 P.2d at 646 (syllabus). Again, in Hoover the legal obligation to make all payments before ownership was transferred to the county was crucial. Id. at 650.
¶ 9 The dichotomy of being either a lessee or a purchaser/borrower under a constitutional provision prohibiting certain "debt" was examined at length in Dieck v. Unified SchoolDistrict of Antigo, 458 N.W.2d 565 (Wis.Ct.App. 1990). While constitutional debt restrictions in Wisconsin differ from those in Oklahoma, the court in Dieck concluded that a school district either had to be a lessee, with the right to non-appropriate and walk away from the leased property, and thus avoid the state's debt limitation, or it could be a purchaser of property (subject to an installment sales contract) and live with the Constitution's debt restrictions. It could not simultaneously do both. Dieck, 458 N.W.2d at 568-73; see also State ex rel.Kane v. Goldschmidt, 783 P.2d 988, 996-98 (Or. 1989). Such is the case in our situation. It is therefore essential to understand what the word "acquire" means under the Oklahoma Constitution, Article X, Section 26(a).
 Construction Of The Word "Acquire"
¶ 10 As previously noted, Article X, Section 26(a) of the Oklahoma Constitution permits bond issuance "for the purpose ofacquiring or improving school sites, constructing, repairing, remodeling or equipping buildings, or acquiring school furniture, fixtures or equipment[.]" (Emphasis added). The word "acquire" is not specifically defined in the Constitution or elsewhere in the Oklahoma statutes. Therefore, we must look to the ordinary meaning of the word, unless the context clearly requires otherwise. 25 O.S. 2001, § 1[25-1]; see Curtis v. Bd. of Educ.,914 P.2d 656, 659 (Okla. 1995).
¶ 11 In Webster's Third New International Dictionary 18 (3d ed. 1993), the primary definition of "acquire" is "to come into possession, control, or power of disposal of." This meaning for the word appears to have been adopted by Oklahoma Appellate Courts.[7]
¶ 12 We conclude that to "acquire" a school site or a building within the meaning of Okla. Const. art. 10, § 26(a) requires that the school district must obtain a legally recognized ownership interest, over which the district has exclusive control. If a school district has only a leasehold interest in property, and the terms of the lease agreement allow the district to "walk away" or terminate the agreement in a given year if no appropriation of money is made for renewal of the lease, then the district has not "acquired" anything, where ownership of the leased property remains in the lessor, and the lessor has the right to take back the property in the event of lease termination. This is particularly significant in light of the language of 2002 Okla. Sess. Laws ch. 483, § 2(A)(17) (amending70 O.S. 2001, § 5-117[70-5-117] (A)(17)), which states that the board of education of each school district shall "[e]xercise sole
control over all the schools and property of the district, subject to [all] other provisions of the Oklahoma School Code[.]"Id. (emphasis added).
 Powers Of School Districts Regarding Lease-Purchase Agreements
¶ 13 A pivotal question in this regard is whether school districts have the legal authority to enter into installment sales contracts, as opposed to leases. Oklahoma municipalities, counties and school districts are authorized to lease real or personal property and make lease payments from amounts appropriated during the current fiscal year. The 2002 Session Laws ch. 483, § 1 (amending 62 O.S. 2001, § 430.1[62-430.1]) provide, in pertinent part:
 C. It is the purpose of this section to authorize such governing boards to enter into lease and lease-purchase contracts but not to incur any obligation upon the part of their respective municipal or governmental subdivisions in excess of the income and revenue thereof provided for such purposes for the fiscal year in which the lease contract is effectively operative.
 D. Any agreement to lease and purchase real or personal property, where title is to be acquired by the municipal or governmental subdivision, shall state the purchase price of the real or personal property so leased and in no event shall the lease be extended so as to cause payment of more than the stated purchase price of the real or personal property plus interest not to exceed ten percent (10%) simple interest on the unpaid balance due as of each payment date. When the purchase price plus interest has been paid, the property shall belong to the lessee and the lessor shall deliver a bill of sale to the property to the lessee. Any lease-purchase agreement may include an option to purchase, transfer and acquire title during the term of the lease upon payment of the balance of the agreed purchase price, and each agreement shall include a provision to transfer title to the lessee at the end of the completed lease term for nominal or no additional consideration.
 E. The payment for the lease or rental of real or personal property shall be made only from annual and supplemental appropriations specifically designated for such purpose, and no appropriation for the purpose of paying rentals on real or personal property shall be transferred or diverted to any other purpose, except as may be authorized by the terms of the agreement or by law.
 F. When any real or personal property has been leased or rented during any fiscal year under any contract which permits continuance of such rental for the remainder of the fiscal year, the renting or leasing thereof shall be continued for the remainder of the fiscal year unless the governing body renting or leasing the same, by proper resolution entered in the minutes of the governing body, shall certify that the continuance of such rental is unnecessary and contrary to the public interest.
Id. (emphasis added).
¶ 14 Further, 2002 Okla. Sess. Laws ch. 483, § 2 (amending 70O.S. 2001, § 5-117[70-5-117]), the statute setting out the general powers and duties of boards of education, provides in subparagraph (A)(7) that a board of education is empowered to "[p]urchase, construct or rent, and operate and maintain, classrooms, libraries, auditoriums, gymnasiums, stadiums . . . and other schoolhouses and school buildings, and acquire sites and equipment therefor[.]" Subsection (A)(12) also provides that districts may "[p]urchase necessary property, equipment . . . and supplies necessary to maintain and operate an adequate school system[.]" With respect to renting or leasing property, subsection (B) provides:
 The board of education of any school district may rent, on a monthly basis, real and personal property, if such items are necessary for the operation of the school, and pay the rental charges for the usage during any fiscal year, or portion thereof, out of appropriations made and approved for current expense purposes during the fiscal year. Any such rental contract extending beyond June 30 of such fiscal year shall be void unless it contains provisions for mutual ratification of renewal pursuant to the conditions provided for in this subsection. It is the intent of this subsection to authorize boards of education to enter into lease contracts but not to incur any obligation against the school district in excess of the income and revenue provided for such purposes for the fiscal year in which such lease contract is operative. Any lease or lease-purchase agreement entered into by any board of education shall state the purchase price of real or personal property so leased. The lease or lease-purchase shall not be extended so as to cause payment of more than the original purchase price of the real or personal property, plus interest not to exceed the legal rate. When the purchase price plus interest has been paid, the property shall belong to the lessee and the lessor shall deliver a deed or bill of sale to the property to the lessee. When any real or personal property has been leased or rented during any fiscal year pursuant to the provisions of any contract which permits continuance of such rental for the remainder of such fiscal year, the renting or leasing thereof must be continued for the remainder of the fiscal year unless the board of education renting or leasing the same certifies by proper resolution entered in the minutes of the board of education that the continuance of such rental is unnecessary and contrary to the public interest.
Id. (emphasis added).
¶ 15 This statute requires that lease payments must be made out of appropriations made and approved for current expense purposes during the fiscal year. Further, the statute requires that "[w]hen the purchase price plus interest has been paid, the property shall belong to the lessee and the lessor shall deliver a deed . . . to the property to the lessee." Id.
(emphasis added).
¶ 16 A school board has and can exercise only those powers that are granted in express words, those fairly implied in or necessarily incidental to powers expressly granted, and those essential to declared objects and purposes of the school board.Carlyle v. Indep. Sch. Dist. No. I-71, 811 P.2d 618, 620
(Okla.Ct.App. 1991) (quoting Bd. of Educ. v. Cloudman,92 P.2d 837, 841 (Okla. 1939)). The school board is given sole control over the school and its property under the statutes, except to the extent otherwise provided in the school code. 2002 Okla. Sess. Laws ch. 483, § 2(A)(17) (amending 70 O.S. 2001, §5-117[70-5-117] (A)(17)); see Cloudman, 92 P.2d at 840.
¶ 17 In the context of granting a mortgage or security interest on property, Attorney General Opinion 70-233 concluded that a school district does not have authority to grant a mortgage covering school property, even where the underlying debt secured by the mortgage is to be paid within the district's then-current fiscal year, in the absence of any statutory or constitutional language granting such power. Id. at 210. While we are aware of no Oklahoma cases specifically holding that an Oklahoma school district lacks the authority to grant a mortgage or security interest in property (such as would arise in an installment sales contract), in the case of School District No. 9 v. McLintock,237 N.W. 539, 540 (Mich. 1931) the Michigan Supreme Court construed a statute giving school districts the power to purchase buildings or school sites, and held school districts in that state did not have the power to enter into an installment sales contract. The Michigan court found that the issuance of bonds was the sole method authorized by that state's Constitution for borrowing money to finance school facilities. Id.
¶ 18 It follows that, absent statutory or constitutional provisions empowering a school district to acquire an undivided fractional or equitable interest in property, where a lease agreement purports to provide that a remainder or fractional interest is held by a private party as security, a school district lacks authority to enter into such a transaction. This result is consistent with the language in 2002 Okla. Sess. Laws ch. 483, §§ 1(D); 2(B) (amending 62 O.S. 2001, § 430.1[62-430.1] (D) and70 O.S. 2001, § 5-117[70-5-117] (B)). A school district may acquire full
title to property by making all lease payments due, with interest, but there is no authorization for acquiring partial title or an equitable ownership interest. It is an all-or-none situation. The school district must either be a lessee, with the ability to "walk away" from the leased property at the end of a given fiscal year, with no further right in or to the leased property, or it is a purchaser/borrower under the agreement, subject to constitutional restrictions. A school district cannot have it both ways.
¶ 19 The 2002 Session Laws ch. 483, §§ 1(D); 2(B) (amending 62O.S. 2001, § 430.1[62-430.1] (D) and 70 O.S. 2001, § 5-117[70-5-117] (B)), construed together, provide options on how a school district obtains title to property through a lease-purchase agreement: (1) the district can fully pay the purchase price plus interest, in installments over the term of the lease, at which point the property shall belong to the district, or (2) if so provided in the agreement, the district may pre-pay the outstanding balance (with interest) prior to completion of the term, and take title at an earlier date, for nominal or no added consideration. The statutes do not anticipate, nor do they authorize, a school district to take equitable title, or some pro rata equitable interest as lease payments are made. The intent of the Legislature in adopting these statutes seems clear; legal title to the property must be taken by the school district when, and only when, all agreed payments are made under the lease. There is no express provision for a school district acquiring "equity" on property under a lease-purchase agreement, nor in creating a security interest under an installment sales contract.
¶ 20 This is not to say that bond proceeds could not be used to acquire title to a building, fixtures or equipment financed through a lease-purchase agreement. Indeed, if proceeds of a general obligation school bond issue are used to pay the outstanding principal balance[8] due under an existing lease-purchase agreement, thereby allowing the district to take full legal title to the property described therein, we believe such a transaction would be allowable under Article X, Section 26(a) of the Oklahoma Constitution.
¶ 21 The effect of using general obligation bond proceeds to make lease payments, while not acquiring title to real or personal property, would create a mechanism whereby the debt limitation of Article X, Section 26(a) is at least indirectly avoided. But it has long been held that the constitutional debt limitations on school districts or other subdivisions of the State cannot be exceeded either directly or indirectly, and it is the duty of the officers of these governmental entities to see that the constitutional debt limitations are strictly enforced.Sch. Dist. No. 2 v. Gossett, 283 P. 249, 252 (Okla. 1929).
¶ 22 In summary, Article X, Section 26(a) of the Oklahoma Constitution provides that, with voter approval, a school district may become indebted past its current fiscal year, in a limited amount, to acquire school buildings or other facilities. The use of the term "acquire" in the Constitution assumes the district will obtain title to the subject property in whole, not in part, when it is purchased with bond proceeds. Further, statutes pertaining to lease-purchase agreements also anticipate that a district will take title to the leased property when all payments (including interest) are paid in full in accordance with the agreement. The Legislature has made no provision for obtaining partial ownership interests through lease payments, nor has it authorized a school district to enter into an installment sales contract creating a security interest in real property. Whether a school district "acquires" or obtains title or a legally recognized interest in real or personal property will be determined by the facts and circumstances of each case, including the precise language of the lease agreement, and cannot be answered in an Attorney General's Opinion. 74 O.S. 2001, §18[74-18](b) (A)(5).
¶ 23 It is, therefore, the Opinion of the Attorney Generalthat:
 1. Proceeds of a school district's general obligation bonds issued pursuant to Okla. Const. art. X, § 26(a) must be used to acquire school buildings, sites, fixtures, equipment or other facilities as described therein.
 2. Under Article X, Section 26(a), the term "acquire" means to obtain full legal title, possession or control, and does not include a fractional or other divided interest, or "equity" in a building or facility. A school district is not authorized to acquire an equitable or partial ownership interest in property through a lease-purchase agreement, nor is a school district authorized to grant a security interest in school property. 2002 Okla. Sess. Laws ch. 483, § 2(B) (amending 70 O.S. 2001, § 5-117(B)); Carlyle v. Indep. Sch. Dist. No. I-71, 811 P.2d 618, 620 (Okla.Ct.App. 1991) (quoting Bd. of Educ. v. Cloudman, 92 P.2d 837, 841 (Okla. 1939)). Therefore, using proceeds of general obligation bonds to make installments of lease payments under a lease-purchase agreement where there is no "acquisition" of an asset would violate Okla. Const. art. X, § 26(a).
 3. No statutory provisions allow a school district to make lease-purchase installments from bond proceeds; under 2002 Okla. Sess. Laws ch. 483, §§ 1, 2(B) (amending 62 O.S. 2001, § 430.1[62-430.1] and 70 O.S. 2001, § 5-117(B)), where title to the leased property remains in the lessor, and the district acquires no property, such lease payments must be made from the district's general fund or building fund. Lone Star Gas Co. v. Bryan County Excise Bd., 141 P.2d 83, 83 (Okla. 1943).
 4. Whether proceeds of general obligation bonds are used to acquire (i.e., purchase) title in or to real or personal property will depend on the facts and circumstances of each case, and cannot be answered in an Attorney General Opinion. 74 O.S. 2001, § 18(b)(A)(5).
W.A. DREW EDMONDSON Attorney General of Oklahoma
LYNN C. ROGERS Assistant Attorney General
[1] A "general obligation bond" is evidence of an indebtedness of a governmental entity or political subdivision which imposes a direct burden on the taxpayers of the entity issuing the bond, i.e., it is backed by the full faith and credit of the issuer, and is payable from a levy of ad valorem taxes on property owners within the entity. See City of Tulsa v. Langley,168 P.2d 116, 122 (Okla. 1946); Perrine v. Bonaparte, 282 P. 332, 334
(Okla. 1929); 64 Am. Jur. 2d Public Securities § 13 (2001). This is in contrast to "revenue bonds" which are paid from some special or designated source, such as revenues derived from operation of a utility. If properly structured, interest paid to the holders of general obligation bonds, and interest on lease-purchase obligations of schools, will each be exempt from state and federal income taxes. 26 U.S.C. § 103(a) (2002); 2002 Okla. Sess. Laws ch. 290, § 1 (amending 68 O.S. 2001, §2358.5[68-2358.5]).
[2] For the interest on a municipal lease to be excluded from income of the holder for federal income tax purposes, provisions of the Internal Revenue Code and certain IRS regulations must be followed. Although the transaction is structured for state law purposes as a lease, so as to avoid debt limitations, for federal tax purposes, it must be more like a conditional sales contract.See Nat'l Ass'n of Bond Lawyers, Fundamentals of Mun. Bond Law § I ch. III, 26; § 2 ch. II, 10 (William L. Gehrig et al. eds., 1999).
[3] Bonds may be authorized in a greater amount than the school district has capacity to incur based on its net assessed valuation, provided the district only issues bonds up to the amount authorized by the Constitution. A.G. Opin. 02-14. For example, if a school district has a net assessed valuation for ad valorem tax purposes of $10 million, it may become indebted (i.e., issue and sell bonds) in an amount not to exceed $1 million under Article X, § 26(a) of the Oklahoma Constitution. If, however, district voters approve the $1 million in debt by the necessary 60% majority, but the district has $700,000 in bonds already outstanding, the district may not issue and sell more than $300,000 so that the Constitutional limit will not be exceeded.
[4] In some situations, a public trust may be part of the financing mechanism. Under 2002 Okla. Sess. Laws ch. 483, § 2(A)(10) (amending 70 O.S. 2001, § 5-117[70-5-117] (A)(10)), a school district may lease its property to another governmental entity. The public trust might lease a school site, issue revenue bonds and use the proceeds to build or purchase the building, fixtures and/or equipment, then lease the land and improvements or other facilities back to the school district, relying on rental payments under the lease agreement to make payments on the public trust's bonds. Thus, in this situation, the school district becomes a sub-lessee.
[5] Whether the obligation takes the form of a bond, a promissory note or other contractual undertaking is immaterial to the issue of whether it is a "debt." Boswell v. State,74 P.2d 940, 943 (Okla. 1937); see In re Univ. Hosp. Auth.,953 P.2d 314, 326 (Okla. 1997) (Kauger, Chief J., concurring).
[6] See Fashion Optical, Ltd. v. Gebetsberger,653 F.2d 1385, 1388-90 (10th Cir. 1981); In re Tulsa Port WarehouseCo., 690 F.2d 809, 811-12 (10th Cir. 1982).
[7] In Charles v. Charles, 713 P.2d 1048, 1051
(Okla.Ct.App. 1985), the Court of Civil Appeals held that a retirement fund, to which a former husband had contributed nothing, which had not vested in him, and which, even after vesting, was "frozen" until he reached age 60, was not "acquired" by him for purposes of division of marital property. In Beattie v. State exrel. Grand River Dam Authority, 41 P.3d 377, 380 (Okla. 2002), the Supreme Court described a party as having "acquired" an interest in real property when he took title by purchase.
[8] We note that general obligation proceeds cannot be used to pay interest due under a lease obligation; it is axiomatic that, to "acquire" property under Article 10, Section 26(a), bond proceeds must be used to obtain tangible property, and not be used for interest.