2007 OK CIV APP 31

Quinton A. BEEN, Petitioner/Appellee,

v.

Sharon M. BEEN, Respondent/Appellant.

No. 102,667.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Nov. 28, 2006.

Michael D. Denton Jr., Denton Law Firm, Mustang, OK, for Petitioner/Appellee.

Floyd W. Taylor, Taylor & Associates, Oklahoma City, OK, for Respondent/Appellant.

DOUG GABBARD II, Presiding Judge.

¶1 Respondent, Sharon M. Been (Wife), appeals portions of the decree of divorce entered by the trial court. Based on the record and the law, we affirm as modified.

## BACKGROUND

¶2 The parties were married on June 3, 2000, and had one child. At the time of their marriage, Petitioner, Quinton A. Been (Husband), had owned a home in Blanchard for over 10 years, and, although he had two college degrees, worked as an artisan sharpening tools. Wife owned a home in Mustang and a Yukon rent house, and worked as a secretary in Mustang. After their marriage, Husband placed the title to the Blanchard home in Wife's name in order to refinance and use some of the proceeds to pay off Wife's credit cards.

¶3 In July 2002, Husband was involved in a head-on automobile collision and received serious injuries. A few months later, Husband separated from Wife and moved in with his parents. In November 2002, Husband filed the present action for divorce. Husband then began dating Paula Tripp and, in June 2004, the couple moved to Red River, New Mexico, where they still live. Ms. Tripp purchased and operated a gift shop in Taos where Husband occasionally did odd jobs.

¶4 The divorce trial was conducted between February and June 2005. Thereafter, the trial court entered a decree of divorce which divided property, granted a judgment of $20,000 to Husband against Wife for loss of separate personal property, awarded custody of the child to Wife, granted visitation to Husband and required Wife to transport the child halfway to New Mexico for five of those visitation periods, and, after imputing minimum wage to Husband, ordered him to pay child support in accordance with the Uniform Child Support Guidelines.[1] Wife appeals.[2]

---

1. The trial court also found Husband not guilty of contempt of court for failing to pay temporary child support and making mortgage payments on the Blanchard home during the pendency of the divorce, all as required by a temporary order.

2. Although Wife's petition in error contained a number of other allegations of error, some were not briefed and are, therefore, deemed waived. *State ex rel. Remy v. City of Norman,* 1981 OK 139, ¶12, 642 P.2d 219, 222.

## STANDARD OF REVIEW

■ ¶ 5 An action for divorce, alimony, custody, and division of property is one of equitable cognizance, and the trial court's judgment will not be disturbed on appeal unless found to be clearly contrary to the weight of the evidence. *Carpenter v. Carpenter*, 1983 OK 2, ¶ 24, 657 P.2d 646, 651.

## ANALYSIS

■ ¶ 6 In her first proposition, Wife asserts the trial court's child support award was improper because it found that only minimum wage should be imputed to Husband because of his disability, and because it failed to include Ms. Tripp's contributions to his support.

¶ 7 Husband's employment history was undisputed. Even though he had two college degrees, Husband had worked as a pipefitter prior to the parties' marriage. During that employment, he had sustained an injury to his neck which was serious enough to require his confinement to a wheelchair for several months. After a period of recovery, he testified that he was unable to return to his previous employment, and opened a machine shop where he worked as an artisan. It was during this period that he and Wife married. He continued this occupation throughout his marriage until he was involved in the automobile collision in mid–2002. He testified that the collision re-injured his neck and that he could no longer maintain gainful employment. Tax returns indicated that his artisan business generated $68,000 in gross income in 2001. However, he filed no tax returns after the accident. He also testified that he had no significant income and was totally supported by Ms. Tripp who provided his housing, made his truck and child support payments, and provided whatever else he needed.

¶ 8 Neither party presented medical evidence regarding his disability. However, Husband admitted helping out at the gift shop by vacuuming, watching the cash register, doing some embroidery work, and visiting with customers, although he also testified that he could not consistently work and could not lift freight that was delivered to the shop. Ms. Tripp verified that Husband was at her gift shop "quite a lot," but testified that she believed his disability was legitimate. Virtually no evidence was presented regarding either the value of the services Husband provided at the shop, nor of the value of Ms. Tripp's contributions to Husband's support.

■ ¶ 9 Where there is conflicting evidence on an issue of fact, we defer to the judgment of the trial court who is in the best position to observe the behavior and demeanor of the witnesses and to gauge their credibility. *Mueggenborg v. Walling*, 1992 OK 121, ¶ 7, 836 P.2d 112, 114. Here, the trial judge imputed minimum wage to Husband based upon his disability and work history.[3] Based on the evidence of his previous work experience, his present physical condition, the actual services he provided at the gift shop, and the financial benefits he received from Ms. Tripp,[4] we are unable to find that the trial court erred. This proposition of error fails.

■ ¶ 10 In her second proposition, Wife asserts the trial court erred by not granting her a judgment against Husband for a portion of the child's daycare expenditures incurred between their separation and trial. She alleges that a temporary order required Husband to reimburse her for half the daycare expenses, that she spent $3,656 for daycare from March 2004 until the trial date, that Husband admitted paying nothing during this period, and that, therefore, he owed $1,828. She admits that she did not request a deficiency judgment, but argues that the trial court should have granted one based upon the evidence and the temporary order.

■ ¶ 11 However, the appellate record does not contain a copy of the purported temporary order upon which Wife's claim is based, and, therefore, we are unable to determine whether the trial court erred.[5] An

---

3. Trial Transcript, page 449.

4. This could properly be construed as "passive income." *See* 43 O.S. Supp.2005 § 118(E)(2)(a)(1).

5. This ruling does not, however, necessarily bar the collection of any such amounts in another proceeding. We note that child support arrearages are judgments by operation of law and are

appellant has the burden of producing a sufficient record and applicable law to demonstrate error, because error is not presumed. *Pracht v. Okla. State Bank,* 1979 OK 43, ¶ 5, 592 P.2d 976, 978.   This proposition fails.

¶ 12 In her third proposition, Wife asserts the trial court erred in requiring her to meet Husband halfway to exchange visitation with the child.   Under the trial court's visitation order, Wife would be required to drive the child from Mustang, Oklahoma, to Dumas, Texas, at least five times per year, and as often as once per month.

¶ 13 Trial courts have wide discretion in granting visitation, and may establish both the time and location of the visitation exchange.   An appellate court may not disturb a trial court's visitation order absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence.   *Daniel v. Daniel,* 2001 OK 117, ¶ 21, 42 P.3d 863, 871.   In every visitation order, the paramount consideration is the best interests of the child.   However, where the best interests of the child would be served by two or more equally reasonable visitation schemes, the trial court should also consider the financial means and other circumstances of the parties.

¶ 14 Typically, trial courts require the visiting parent to provide transportation.   This common sense rule places the financial burden of visitation upon the party who benefits most from it, and protects custodial parents from needless wasted trips if the other parent fails to appear.   However, it may be appropriate, under the facts and circumstances of a particular case, to order the custodial parent to physically transport the child for visitation as where, for example, the distance involved is minimal and the visiting parent is unable to provide transportation. Alternately, a trial court "may" apportion transportation costs in much the same way it apportions child care expenses.   43 O.S. Supp.2005 § 118(E)(15).

¶ 15 Here, we find no facts and circumstances justifying the trial court's order requiring the custodial parent to transport the child such a long distance for visitation.

To the contrary, the record suggests that Wife has difficulty in arranging her work schedule to transport the child for visitation. Husband, on the other hand, is not employed and has no employment obligation or other impediment to transporting his child for visitation.   While the record supports the trial court's analysis that Wife should bear some of the *cost* of transportation, we do not agree that she should bear the burden of physically transporting the child the long distance required by the order.   Under the facts and circumstances of this case, we find the order an abuse of discretion, and modify the decree by striking the requirement that Wife participate in transporting the child for visitation, and substituting it with an order requiring Wife to reimburse Husband for half the cost of transportation during the five specified summer and holiday visitation periods, with the cost determined by multiplying the distance in miles between the parties' homes by the yearly federal Internal Revenue Service mileage rate.   The decree is also modified to show that each exchange of visitation shall occur at the Yukon Police Department or other location mutually agreed to by the parties.

¶ 16 In her fourth proposition, Wife asserts the trial court erred by granting Husband increased visitation when the child reaches ten years of age.   Wife relies upon the following language in *Miracle v. Miracle,* 1961 OK 55, ¶ 14, 360 P.2d 712, 715, where the trial court granted custody to a father because of its concern that the mother would remove the child to Italy and that raising a child on foreign soil might not be in the child's best interests.   In reversing, the Supreme Court stated:

Therefore, we must not necessarily consider what the facts and circumstances of the parents might be eight or ten years from now or even five years from now, as any consideration would have to be predicated on conjecture, but what would be for the best interest of the child presently and in the immediate future.

¶ 17 *Miracle* is not particularly persuasive because the present custodial order was

enforceable until paid in full.   *See* 43 O.S.2001 § 137.

based upon facts and circumstances in existence. More importantly, Wife testified that she did not disagree with the proposed future visitation schedule; plus, she failed to make a contemporaneous trial objection, thereby waiving error.[6] *See* 12 O.S.2001 § 2104.

¶ 18 In her fifth proposition, Wife asserts the trial court erred in its property division by granting Husband a property division alimony judgment for $20,000. The evidence indicated that the marital property in this case was insignificant. In addition, Husband failed to produce evidence that he had significantly enhanced the value of Wife's separate property (the two homes and a Corvette), as required by *Thielenhaus v. Thielenhaus*, 1995 OK 5, 890 P.2d 925, 931. The evidence also fails to persuade us that Wife committed misconduct which resulted in a foreclosure action against the Blanchard property, and a subsequent sale of the property for less than its fair market value. Although Wife was dilatory in placing the home back into Husband's name in order to allow him to refinance, we are unable to find that she acted in "bad faith" or that earlier action by her would have meant a different result in view of Husband's inability to work and his financial condition.[7]

¶ 19 Nevertheless, the evidence indicated that Wife received tax refunds of $4,536 in 2001 and $4,000 in 2002, and that she disposed of or allowed the disposal or destruction of $18,875 worth of Husband's separate personal property.[8] Regarding the latter, Husband testified that this property was in Wife's possession when he left, and that when he later asked Wife for its return, she refused, stating that he had taken what he wanted. While Wife disputed this evidence, and claimed that some of the property had been stolen, the trial court was persuaded by Husband's evidence.

¶ 20 Title 43 O.S.2001 § 121 provides that a trial court must set aside to each party in a divorce their separate personal property and that the property settlement as a whole be "just and reasonable." In applying this statute, trial courts are vested with wide discretion, and it must clearly appear that it abused its discretion before its decision will be reversed. *Manhart v. Manhart*, 1986 OK 12, ¶ 45, 725 P.2d 1234, 1240–41. Here, we are unable to find that an abuse of discretion occurred. This case is distinguishable from *Charles v. Charles*, 1985 OK CIV APP 44, 713 P.2d 1048, relied on by Wife, because the trial court's order is amply supported by the record.

## CONCLUSION

¶ 21 For the above and foregoing reasons, the decree of divorce is affirmed as modified by this opinion.

¶ 22 AFFIRMED AS MODIFIED.

RAPP, V.C.J., and REIF, J., concur.

---

6. At trial, when asked whether she thought Husband's suggested visitation order was proper, she responded by saying "Not really, but I don't disagree with what he wants to do either." Trial Transcript, page 289, lines 4–7.

7. We note that Wife, not Husband, was eventually required to report $20,000 income on her tax return as a result of debt cancellation on the Blanchard home.

8. Petitioner's Exhibit 7 lists $19,925 worth of personal property. However, Husband testified that an RCA home theater system, a cappuccino maker, and a Pioneer CD changer were marital property, reducing the total amount to $18,875. Trial Transcript, page 141.