2012 OK CIV APP 27

Peter M. CHACON,
Respondent/Appellant,

v.

Susan L. CHACON, Petitioner/Appellee.

No. 107,963.

Court of Civil Appeals of Oklahoma,
Division No. 2.

Dec. 13, 2011.

Certiorari Denied March 6, 2012.

Beverley Q. Watts, Oklahoma City, Oklahoma, for Respondent/Appellant.

Stefanie Lorbiecki, Sapulpa, Oklahoma, for Petitioner/Appellee.

DEBORAH B. BARNES, Presiding Judge.

¶ 1 Respondent/Appellant Peter M. Chacon (Husband) appeals portions of the trial court's "Orders of the Court and Decree of Dissolution," filed on December 23, 2009 (Decree). He also appeals the trial court's May 27, 2010 order[1] awarding attorney fees to Petitioner/Appellee Susan L. Chacon (Wife).

¶ 2 Husband asserts the trial court erred by: (1) refusing to transfer the case from Creek County to Pittsburg County; (2) al-

---

1. Record (R.), p. 211.

lowing the children to relocate with Wife to Pennsylvania; (3) improperly dividing the marital estate; (4) awarding Wife support alimony; (5) improperly calculating the child support; (6) ordering that his visitation with the children be supervised; and (7) awarding Wife attorney fees and costs. Based on our review of the record and applicable law, we affirm the Decree as modified. We affirm the trial court's order granting attorney fees and costs to Wife. We grant Wife's request for appeal-related attorney fees and remand with directions.

## PROCEDURAL HISTORY AND FACTS

¶ 3 Husband and Wife married in 2002. Both served in the military for most of their marriage. At the time Wife filed her petition for dissolution of marriage on August 28, 2008,[2] the parties were residents of Creek County and had two children, ages three and one. Wife was six months pregnant with their third child. The parties had separated on July 26, 2008, when Wife learned that Husband was in an extramarital relationship with a woman (Girlfriend) who resides in Pittsburg County.

¶ 4 On September 9, 2008,[3] the trial court entered a "Temporary Order Agreement," which Husband, appearing *pro se*, approved. This agreed order established Wife's temporary custody of the children and a visitation schedule for Husband.

¶ 5 On December 1, 2008,[4] Husband filed his motion to modify the Temporary Order Agreement to address Wife's intentions to move with the children from Creek County to Pennsylvania and the effect that would have on his visitation. He did not challenge the temporary custody arrangement. Wife responded,[5] asking for modifications to the agreed order, as well as requesting relocation. She stated that since the Temporary Order Agreement was entered, the parties' third child was born in November of 2008. Wife asserted that child support, therefore, should be increased and that Husband's income had increased as well. Wife requested that Husband's visitation be modified to encompass the newborn and asked that he "refrain from exercising visitation with the children in the presence of his [Girlfriend] and that he have no non-relative overnight guests of the opposite sex while exercising visitation."[6] Wife stated that she intended to move to Pennsylvania so that her parents could assist her with caring for the three young children.

¶ 6 The trial court held a hearing to consider modifications to the Temporary Order Agreement and Wife's relocation request.[7] Both parties were represented by counsel,[8] and both parties testified. Husband did not request a change in custody or joint custody. He testified that he is "on call" to report to work at any time.[9] A minute order filed on December 24, 2008,[10] indicates the trial judge granted the motion to modify, allowing Wife and the children to relocate to Pennsylvania,[11] modifying child support, forbidding overnight visitation with the newborn, forbidding the parties from having the children around "third-party romantic friends," and setting a hearing for January 6, 2009, to give the parties time to work out visitation. A minute order filed on January 9, 2009, noted the parties had agreed on visitation. The case was set for trial on February 26, 2009, and was subsequently reset for March 6 and then for April 23, 2009.

---

2. R., p. 172.

3. R., p. 4.

4. R., p. 8. Husband never filed an answer, although at trial, his counsel dictated his answer and counterclaim into the record. Transcript of Partial Trial, held on June 17, 2009 (June 17 Tr.) pp. 25–29.

5. R., p. 10.

6. R., p. 11.

7. *See* Transcript of Hearing on Motion to Modify Temporary Order and Request for Relocation, December 23, 2008 (Dec. Tr.).

8. Husband was represented by attorney Richard White.

9. Dec. Tr., p. 68.

10. R., p. 15.

11. Wife testified that her mother, who lives in Pennsylvania, had come to live with her and had been assisting her since October. Dec. Tr., p. 13.

¶ 7 On March 12, 2009, attorney Jeff Contreras entered his general appearance as new counsel for Husband. The trial setting was continued until June 16, 2009.

¶ 8 On June 1, 2009, Husband filed a "Special Appearance and Motion to Transfer for Lack of Venue," [12] asserting that 43 O.S.2011 § 103, the divorce venue statute, compels the transfer of the action to Pittsburg County because Wife moved to Pennsylvania in December of 2008, and Husband moved to Pittsburg County (McAlester) in April of 2009. Husband rented out the marital home in Creek County and moved into the house that Girlfriend shares with her 15–year–old son.[13] He commutes to his job in Tulsa. Husband shares household expenses with Girlfriend.[14] Wife responded that Husband was forum shopping and had waived any objection to venue by participating in the case for several months—at first *pro se* and then as represented by his first counsel, Mr. White—before Mr. Contreras entered his general appearance.

¶ 9 In a minute order, the trial court denied Husband's request for a change of venue on June 16, 2009.[15] On June 17, 2009, the trial court denied Husband's request that the matter be stayed and declined to certify the order denying the venue change for appeal.[16]

¶ 10 The trial on the issues in the divorce began on June 17, 2009. It was continued after one day of testimony for docket availability. Husband filed a motion to stay the trial based on his objections to venue,[17] which the trial court denied on September 18, 2009.[18] The trial continued on September 24,

2009, and finished the following day. The Decree was filed on December 23, 2009.[19]

¶ 11 The Decree provides, in pertinent part, as follows:

1. Jurisdiction and venue are properly laid in Creek County, State of Oklahoma.

. . . .

8. That [Wife] is a fit and proper person to be awarded sole and exclusive custody of the minor children of the parties. This Court find[s] that it is in the best interest of the minor children to be placed in the sole custody of [Wife].

The demeanor of [Husband] during the multiple hearings evidenced to the Court an emotional instability which necessitates professional visitation supervision. Continuing refusal to obey a court order alone might not support such a requirement but when considered in light of his West Point training to follow orders, his demeanor and his emotional instability, it was unavoidably clear that the safety and well-being of these minor children required professional supervision of their time with [Husband]. Whether this instability was the result of his military service or something else was never addressed.

Therefore, this Court finds that sole custody of the minor children is hereby granted to [Wife], subject to the professionally supervised visitation rights of [Husband] as set forth below:

(a.) [Husband] is granted professionally supervised visitation with the minor children for the protection of the safety of the minor children due to his emotional insta-

---

12. R., p. 17.

13. Transcript of the trial held on September 24 and 25, 2009, Vol. I (Sept. Tr.), pp. 67–68.

14. Sept. Tr., Vol. I, pp. 139–141.

15. R., p. 50.

16. R., p. 57.

17. R., p. 58.

18. R., p. 63. On September 16, 2009, Husband filed a "Special Appearance and Motion for Stay of Trial Proceedings," pending "the Oklahoma Supreme Court's ruling on [Husband's]

Petition for Writ of Prohibition or Alternatively Mandamus." R., p. 58. Husband had filed a "Combined Application to Assume Original Jurisdiction and Petition for Writ of Prohibition or Alternatively Mandamus" on September 11, 2009, in Appeal No. 107,525. The trial court denied the motion for stay on September 18, 2009. R., p. 63. The Oklahoma Supreme Court denied Husband's application for a stay of trial proceedings on September 23, 2009 (R., p. 188) in Appeal No. 107,525 and denied his Application to Assume Original Jurisdiction and the "[R]equest by the real party in interest for sanctions against [Husband]" on October 19, 2009. R., p. 189.

19. R., p. 190.

bility and admitted, continuing refusal to obey court orders regarding the minor children;

(b.) [Husband] may visit with the minor children when he is in [Wife's] current State of residence (currently Pennsylvania) or whenever the minor children will be in Oklahoma. All [Husband's] visits with the minor children must be arranged at times which will not conflict with [Wife's] or children's classes and will allow professional supervision of [Husband's] time with the minor children. Due to [Husband's] need for professionally supervised visitation, no overnight visits are safe or in the minor children's best interest.

(c.) Any costs attendant to professionally supervised visitation by [Husband] with the minor children shall be borne by [Husband] which gives him control of this expense.

(d.) No person of the opposite sex, not related by blood or marriage to the minor children, shall stay overnight with the parent while the minor children are in his/her physical custody.

. . . .

12. Both parties have the legal duty and obligation to provide for the support of their children. Child support shall be in accordance with the Oklahoma Child Support guidelines. [Wife's] monthly income shall be figured at minimum wage ($7.25 per hour/ $1,256.67 per month plus her monthly disability income) because there is no evidence before this Court that [Wife] is currently employable at a greater hourly rate. The Court finds that [Wife's] employability in September of 2007 is not relevant. The Court has determined [Husband's] gross monthly income to be $10,305.03. This figure was calculated using [Husband's] 2007 average monthly income from his employer (using his 2007 W2s) plus his $1,174.00 per month VA benefits [$10,430.27 mo. avg.], [Husband's] 2008 average monthly income (using the parties' 2008 federal income tax return plus his $1,174.00 per month VA benefits [$9,140.08 mo. avg.]) and [Husband's] 2009 paycheck stubs, plus his $18,000.00 cash bonus received in February, 2009, plus his $1,174.00 per month VA benefits plus his $1,300.00 per month rental income [$11,344.74 mo. avg.]. The three monthly averages for 2007 ($10,430.27), 2008 ($9,140.08), and 2009 ($11,344.74) added together and divided by three (3) years equals [Husband's] average monthly income of $10,305.03 for the last three years.

13. [Husband's] monthly child support payments [are] $1,750.72

. . . .

21. This Court finds that the real property of this marriage . . . in Creek County . . . [has a] market value as of March 20, 2009[of] $270,000.00. The Court determines that the equity in this home [is] $56,620.59. . . .

22. This Court hereby awards the real property of this marriage as described in the above paragraph to [Husband]. However, [Wife] is entitled and is hereby awarded $28,310.30 as and for her one-half (1/2) share of the [equity] value of this real property. This Court finds that [Wife's] . . . equal share . . . shall be paid to her by [Husband] within *120* days of the date of the filing of these Orders of the Court and Decree of Dissolution. . . .

. . . .

24. [Husband] shall be ordered to be held responsible for the . . . debts of the marriage. . . .

. . . .

26. [Wife] needs and is entitled to support alimony from [Husband], and [Husband] has the ability to pay such alimony. Therefore, [Husband] shall pay to [Wife] support alimony in the [monthly] amount of $3,284.00 . . . for twelve (12) months but not to exceed four (4) months after [Wife] receives her Master's Degree. . . .

. . . .

31. The issue of attorney fees and costs is hereby reserved for determination by this Court upon proper application by either party.

Wife filed her "Application for Attorney Fees and Costs" on January 21, 2010.[20] Husband

**20.** R., p. 64.

objected.[21]

¶ 12 On March 3, 2010, *in camera*, Husband requested that the trial judge recuse. The trial court denied the request on March 12.[22] On March 19, Husband filed a "Motion to Disqualify" the trial judge, alleging that her "impartiality might be reasonably ... questioned based on the fact that [Husband] has commenced formal complaints against [the trial judge] with the Council on Judicial Complaints, The Department of Veterans' Affairs, and The Judicial Election Review Board."[23] Wife filed a "Motion to Dismiss"[24] Husband's "Motion to Disqualify" for failure to comply with Oklahoma District Court Rule 15.[25] On March 30, 2010, the trial court held a hearing on Wife's application for attorney fees, Husband's motion to disqualify, and Wife's motion to dismiss Husband's motion to disqualify.[26] The trial court denied Wife's motion to dismiss, denied Husband's motion to disqualify and passed the hearing on the fee application until April 27, 2010.

¶ 13 On April 2, 2010, Husband filed his "Motion and Request for Rehearing on [Husband's] Motion to Disqualify,"[27] to which Wife responded.[28] The trial court denied the request for rehearing.[29]

¶ 14 On April 20, 2010, Wife filed an amended application for attorney fees,[30] to which Husband objected.[31] After a hearing, the trial court entered an order awarding Wife attorney fees and costs on May 27, 2010.[32]

¶ 15 The trial court's attorney fee and cost order provides, in pertinent part:

Long ago [Wife and Husband] agreed that [Husband] would earn the living for the family and [Wife] would stay home and raise the children. They chose Creek County due to the job opportunities for [Husband] in the Tulsa area. Neither party had any family or pre-existing support network in Oklahoma. Only after [Wife] was pregnant with their third child did this agreement disintegrate.

Even though [Husband] was living in McAlester with his [G]irlfriend, he did not object to finishing the divorce in Creek County nor to [Wife's] move to Pennsylvania to be close to her family and support network until [Wife] changed her mind about joint custody. The objection to Creek County venue didn't arise until after [Husband] had hired counsel located in Pittsburg County.

Although [Husband] was awarded the home and its mortgages, he has ceased payment of those mortgages which has caused [Wife] to expend additional monies to preserve her own credit rating from being damaged by foreclosure since her name is on both underlying promissory notes. [Husband], by his unilateral decisions to not pay his allocated joint debts has succeeded in further financially crippling [Wife].

[Wife] was already at a substantial disadvantage regarding employment opportunities as a single custodial parent of three very young children. Although college-educated, [Wife] has single-handedly borne the financial burdens of child care and the children's preschool because [Husband] wasn't even paying his required support alimony. [Wife] saw no purpose in sending [Husband] the child care receipts when he wasn't even paying the mortgages and support as ordered by this Court.

21. R., p. 108.

22. R., p. 110.

23. R., p. 112.

24. R., p. 115.

25. 12 O.S.2011, ch. 2, app.

26. R., p. 120.

27. R., p. 121.

28. R., p. 124.

29. R., p. 127.

30. R., p. 128.

31. Husband did, however, stipulate to Wife's counsel's hourly rate. Transcript of March 30, 2010, hearing on Motion to Recuse (Mar. Tr.), p. 75.

32. R., p. 211.

[Wife] incurred additional expenses of a plane ticket, hotel room and rental car totaling $750.00 to attend the April 27, 2010, hearing before this Court.

Weighing all the equities and considering all the testimony in this case to date, this Court finds [Husband] should be and he is hereby ordered to pay [Wife's] attorney's fees and costs in the amount of $16,473.57 plus travel reimbursement of $750.00 for a total amount of $17,223.57.

This attorney fee and cost award of $17,223.57 to [Wife] shall be secured by a lien on the marital home....

¶ 16 The additional underlying facts are largely undisputed. Wife testified that she and Husband married in 2002 after they graduated from the U.S. Military Academy at West Point. They both served as commissioned officers for five years, serving in Iraq part of that time.

¶ 17 After they left the military, Husband, Wife, and their first-born son, born in 2005, moved to Creek County in 2007 because Husband got a job as a drilling engineer. Wife did not work outside the home. Another son was born later in 2007. At the time Wife filed for divorce in August of 2008, she was pregnant with their third son, who was born in November of 2008.

¶ 18 Husband testified he earns $88,000 annually and also receives $1,174 a month in disability payments from the Veterans' Administration.[33] He received a bonus of $18,000 in 2009.[34] At time of trial, Husband was also receiving rental income of $1,300 per month from the marital home in Creek County.[35]

¶ 19 Wife testified her only income is $243 a month from the VA.[36] She also receives $1,425 per month for child support from Husband pursuant to the Temporary Order Agreement, as well as $575 temporary spousal support.[37]

¶ 20 The parties do not dispute that the marital home was appraised for $270,000, and that the mortgage debt on the home is $214,000. Prior to trial, Husband and Wife had already divided the marital personal property by agreement.

¶ 21 In September of 2009, during the continuation of the trial to the court, Wife testified she was now a full-time graduate student in business in Pennsylvania[38] to make herself more marketable[39] and to be able to achieve a salary that would support child care for three children.[40] The U.S. Army is paying for her graduate degree.[41] She testified that she and the three children live with her parents and she commutes to graduate school. Her current living expenses while attending graduate school in business are $3,284 per month.[42]

¶ 22 Husband testified at trial that for the most recent six months, he has lived in McAlester, Oklahoma, with Girlfriend and her teenage son in her house[43] and commutes to his job in Tulsa. He pays Girlfriend some rent and other expenses, although he testi-

**33.** Husband has a 60 percent disability rating from the military. "Well, one of 'em was a head injury, Grade 3 concussion. One of 'em was, um, depression. One of 'em was shrapnel wounds sustained in combat to the leg. I believe one of 'em was shrapnel wounds sustained to the face in combat. Um, [Wife] probably knows better than I do." Dec. Tr., pp. 71–72.

**34.** Sept. Tr., Vol. I, p. 78. Post-decree, Husband testified on March 30, 2010, that he had received a $27,000 bonus in 2010, had purchased personal gifts for Girlfriend and a 10–day honeymoon trip in Costa Rica. Mar. Tr., pp. 36–37. Two months later, on May 24, 2010, Wife filed an application for a citation for indirect contempt of court, alleging Husband has not paid child support, support alimony, or the mortgages on the marital home, as ordered in the Decree. R., p. 206.

**35.** June 17 Tr., p. 34.

**36.** *Id.*

**37.** June 17 Tr., p. 59.

**38.** Sept. Tr., Vol. I, p. 5.

**39.** Sept. Tr., Vol. I, p. 52. She testified she had applied for a job with over a hundred companies before beginning graduate school. *Id.*

**40.** Sept. Tr., Vol. I, p. 53.

**41.** Sept. Tr., Vol. I, p. 49.

**42.** Sept. Tr., Vol. I, pp. 13–20, 26.

**43.** Sept. Tr., Vol. I, p. 67.

fied that he could not afford an apartment in Tulsa while paying the mortgages on the marital home. Husband admitted that before Wife moved to Pennsylvania, Girlfriend had been with Husband and Wife's children several times, including overnight visits at Girlfriend's house.[44] The trial court had announced its ruling from the bench after a hearing attended by both parties and their respective attorneys on December 23, 2008. The trial court had stated that "both of [you] are prohibited from taking these children around any third party of the opposite sex who is not related to [you] or anybody that you're involved with in any sort of romantic relationship. And there will be no overnights with such people."[45] Despite attending that hearing, Husband testified, when asked why he had his children around Girlfriend on numerous occasions in 2009 that "[a]t the time, I did not realize I was violating a court order. I was unaware of the court order at that time."[46]

## STANDARD OF REVIEW

¶ 23 "The interpretation to be given to a statute is a question of law, subject to our plenary, independent and non-deferential examination." *State of Oklahoma ex rel. Oklahoma State Department of Health v. Robertson*, 2006 OK 99, ¶ 5, 152 P.3d 875, 877. If a statute is plain and unambiguous, no judicial construction is necessary. It will receive the effect its language dictates. *In the Matter of BTW*, 2010 OK 69, ¶ 12, 241 P.3d 199, 205.

¶ 24 The trial court is vested with wide discretion in dividing property and awarding alimony. On appeal, we will not disturb the trial court's judgment regarding property division or alimony absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. *Peyravy v. Peyravy*, 2003 OK 92, 84 P.3d 720. The property division does not have to be equal, but only equitable. *Favell v. Favell*, 1998 OK CIV APP 22, ¶ 23, 957 P.2d 556. The burden of showing that the judgment is clearly against the weight of the evidence is on the appellant. *Manhart v.*

*Manhart*, 1986 OK 12, ¶ 5, 725 P.2d 1234, 1236.

¶ 25 Matters relating to child support are addressed to the sound legal discretion of the trial court and will not be reversed absent a showing of abuse of discretion or that the decision is clearly contrary to the weight of the evidence. *Merritt v. Merritt*, 2003 OK 68, 73 P.3d 878. The amount of child support set by a trial court will not be modified or set aside on appeal unless the award is clearly against the weight of the evidence or is somehow unjust or inequitable. *State of Oklahoma ex rel. Department of Human Services v. Baggett*, 1999 OK 68, ¶ 3, 990 P.2d 235, 238.

¶ 26 An appellate court will not disturb the trial court's judgment regarding custody absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. *Manhart v. Manhart*, 1986 OK 12, ¶ 14, 725 P.2d 1234, 1237.

¶ 27 To reverse a trial court's determination as to visitation, it must appear from the record on appeal that the trial court abused its discretion. *Gamble v. Gamble*, 1970 OK 150, ¶ 25, 477 P.2d 383, 388. "The term 'discretion' denotes the absence of a hard and fast rule and, when it is invoked as a guide to judicial action, means 'sound discretion'; this is held to mean a discretion not exercised willfully or arbitrarily, but with a regard to what is right and equitable under the circumstances." *Osborne v. Mollman Water Conditioning, Inc.*, 2003 OK CIV APP 20, ¶ 19, 65 P.3d 632, 637 (citation omitted).

¶ 28 When considering the issue of attorney fees in a divorce action, the trial court should consider the parties and all of the circumstances in the case, including the means and property of the respective parties under the property division. Before such an order will be reversed, it must be shown that the trial court abused its discretion. *Har-*

---

44. Sept. Tr., Vol. I, pp. 68–70.

45. Dec. Tr., p. 88; R., p. 15 (minute order).

46. Sept. Tr., Vol. I, p. 74.

*mon v. Harmon,* 1983 OK 89, ¶ 19, 770 P.2d 1, 5.

## ANALYSIS

### I. Venue

¶ 29 Husband asserts the trial court erred when it refused to transfer venue to Pittsburg County when he rented out his marital home in Creek County and moved to Pittsburg County to live with Girlfriend while commuting to Tulsa to work. He asserts he "was extremely prejudiced by the trial court's failure to comply with" the venue statute—43 O.S.2011 § 103,[47] although he does not identify or specify for our review the prejudice he claims to have suffered, and the evidence of record reveals no prejudice that would support a reversal of the trial court on this issue.

¶ 30 The record reveals that within two weeks of the fifth trial setting and nine months into this proceeding, with two attorneys having entered general appearances [48] on behalf of Husband, Husband requested a change of venue. Husband had already entered into a Temporary Order Agreement and had sought relief from the trial court by filing his motion to modify the Temporary Order Agreement in December of 2008, all in Creek County.

¶ 31 "A party waives a venue objection if that party has sought affirmative relief from the court." *In the Matter of Baby Girl L.,* 2002 OK 9, ¶ 44, 51 P.3d 544, 560 (citation omitted). We find Husband waived any ob-jection to venue; therefore, the trial judge did not err by refusing to enter an order transferring this divorce action to Pittsburg County.

### II. Relocation of the Children

¶ 32 In his next Proposition of Error, Husband asserts that the trial court erred by allowing Wife to take the children to live with her and her parents in Pennsylvania, "depriving the children [of] the right to constant and continuous contact with their father." He asserts that Wife's desire to have a support system around her, the two young boys, and the newborn was for her "comfort" and that her "comfort" should not outweigh Husband's right "to enjoy visitation with his children." Consideration of Husband's arguments and all of his case citations, however, leads to the conclusion that he is actually challenging the trial court's custody determination.[49]

¶ 33 The burden is upon the party appealing from the custody award to show that the trial court's decision is erroneous and contrary to the children's best interests. *Daniel v. Daniel,* 2001 OK 117, ¶ 21, 42 P.3d 863, 871. When reviewing custody decisions we give deference to the trial court because it "is better able to determine controversial evidence by its observation of the parties, the witnesses, and their demeanor." *Foshee v. Foshee,* 2010 OK 85, 247 P.3d 1162, n. 13 (citing, inter alia, *Daniel* at ¶ 22, 42 P.3d at 871).

47. The statute provides, in pertinent part (emphasis added), as follows:

> B. The court *may,* upon application of a party, transfer an action for divorce ... at any time after filing of the petition to any county where venue would be proper under subsection A of this section *if the* requirements of subsection C or D of this section are met.
>
> C. The court shall grant a party's application for change of venue when the other party is not a resident of this state at the time the application for change of venue is filed, or the plaintiff has departed from this state and has been absent for more than six (6) months preceding the date the application for change of venue is filed, and transfer is requested to the county where the applying party resides in this state.

48. Mr. White appeared for Husband at the hearing held in December of 2008. Mr. Contreras filed his general appearance as co-counsel on March 12, 2009.

49. Although Husband argues in his Reply Brief, p. 4, that he "was never allowed to submit evidence which would support his right to visitation with his children," he, in fact, appeared with counsel and testified at the trial court's hearing held on December 23, 2008. Husband also argues that Wife's relocation was not in "good faith"—an issue raised for the first time in his Reply Brief. *Evers v. FSF Overlake Associates,* 2003 OK 53, ¶ 18, 77 P.3d 581, 587 (holding that "it is not the duty of the appellate court on review to make first-instance determinations of disputed law or fact issues" that have not been raised or assessed at trial).

¶ 34 Husband states in his Brief–in–Chief that he "was a good father and made every effort to see his children. Similarly, the evidence proved that [Wife] was upset and mad about the divorce." While these assertions may indeed be true, that alone is not sufficient to reverse the trial court's custody determination. Husband cites to no evidence in the record that establishes that the children have suffered adverse effects from living with their mother and grandparents in Pennsylvania and being visited by him. Husband has failed to show that Wife's custody of the children is against the clear weight of the evidence.

¶ 35 The record on appeal shows that Husband chose to leave the family to engage in an extramarital affair and live with Girlfriend and her teenage son in Pittsburg County. At the time, Wife was unemployed, caring for two children under the age of 4, and pregnant with their third child. After Husband left the marital home, Wife's mother came to Creek County to assist Wife for two months, there being no other family in Oklahoma to support Wife.[50] Wife has extended family in Pennsylvania, including both her parents. Wife's attempts to secure employment at a salary level sufficient to sustain her and her children were unsuccessful. She opted to pursue her MBA degree in Pennsylvania, where she would have the support of her extended family in caring for her three small children while she attended school. Husband admitted Wife had been cooperative about visitation, and he produced no evidence that the children's best interests would be adversely affected by remaining in her custody. *See Stonebarger v. Wilkins,* 2008 OK CIV APP 35, 182 P.3d 849.

¶ 36 Contrary to the trial court's December 23, 2008 order, Husband admits he visited with Girlfriend in the presence of his children. He testified that if the children were living with him, Girlfriend, and her son in Pittsburg County, his children would have to sleep on a futon in Girlfriend's living room. Based on all the facts and circumstances of

record, we find the trial court did not abuse its discretion by deciding that the children's best interests were served by being in Wife's custody.

### III. Division of Marital Estate

¶ 37 Husband complains that the "trial court's award of support alimony, a cash payment in lieu of property settlement, allocation of debt and computation of child support is not supported by the evidence and was an abuse of discretion."[51] Husband contends that there is no evidence in the record to support the trial court's award of alimony and the property division; therefore, the trial court must have entered the Decree to "punish" Husband.

¶ 38 We first address the property division, as to which the trial court has broad discretionary power. *Teel v. Teel,* 1988 OK 151, 766 P.2d 994. There is no dispute that all the property at issue is marital property, subject to equitable division. Husband accurately states that "[b]eyond the personal and household effects of these parties, there was little marital estate." He admits that the parties agreed to the division of most of the personal property, but complains the trial court did not value all the personal property and did not divide the marital property and debts equitably. In fact, Husband's Exh. 4–A, admitted by stipulation,[52] lists all the personal property values.

¶ 39 The trial court considered the stipulated values, the uncontroverted evidence establishing the appraised value of the marital home and the remaining mortgage debt, and each party's financial situation. The trial court awarded the marital home to Husband, along with the debt, and ordered that Wife be paid her half of the equity ($28,310.30) within 120 days of the Decree. Although Husband claims he has no means by which to pay Wife's portion of the equity, post-decree, he testified on March 30, 2010, that he had received a $27,000 bonus. Husband has failed to cite to evidence sufficient to show

---

50. Dec. Tr., pp. 12–13.

51. Brief–in–Chief at "Proposition III." Husband failed to number the pages of his Brief–in–Chief

in contradiction of Okla.Sup.Ct.R. 1.11(a), 12 O.S.2011, ch. 15, app. 1.

52. Sept. Tr., Vol. II, p. 282.

the trial court abused its discretion as to its property division. Therefore, we affirm the trial court's property division.

## IV. Support Alimony

¶ 40 Husband appeals from the award of alimony to Wife and contends Wife has no need for it. He states in his Brief–in–Chief that the "evidence supported a finding that [Wife] was well qualified for employment, yet chose to enroll in school rather than get a job."

¶ 41 In the Decree, the trial court found Wife needed support alimony and Husband had the ability to pay it based upon his testimony regarding his income sources. The alimony was limited in duration to "twelve (12) months but not to exceed four (4) months after [Wife] receives her Master's Degree." The monthly amount reflected Wife's testimony as to her monthly expenses while attending graduate business school—$3,284. The trial court calculated Husband's average monthly income for the past three years in the Decree as $10,305.03.

¶ 42 The Oklahoma Supreme Court recently stated as follows regarding support alimony:

Alimony is an allowance for the maintenance of a party. In awarding alimony, although each case depends on its own facts and circumstances, the amount must be reasonable. Oklahoma defines support alimony as a need-based concept, with a purpose of cushioning the economic impact of the post-marriage transition and readjustment to gainful employment. Demonstrated need is shown by the totality of proof of the spouse's financial condition.

Support alimony is based on a consideration of relevant factors including: demonstrated need during the post-divorce economic readjustment period; the parties' station in life; the length of the marriage and the ages of the spouses; the earning capacity of the parties as well as their physical condition and financial means; the accustomed style of living of the parties; evidence of a spouse's own income-produc-

ing capacity and the time needed to make the post-divorce transition for self-support.

*Hutchings v. Hutchings,* 2011 OK 17, ¶¶ 15–16, 250 P.3d 324, 327 (footnotes omitted). On appeal, Husband bears the burden of showing the judgment is clearly against the weight of the evidence. *Peyravy v. Peyravy,* 2003 OK 92, ¶ 14, 84 P.3d 720, 723.

¶ 43 Wife testified that she had been out of the job market since leaving the military and while raising her three young children. She testified she had applied for over 100 jobs with no success in finding one that would cover her expenses, including child care for the children. Her income from the VA is $243 a month. She had been living on the temporary child support and temporary alimony payments from Husband. She pursued her MBA degree to be more marketable for jobs that would support her and her children.

¶ 44 The trial court found Wife's efforts to obtain additional education were reasonable under the circumstances. Wife's choice of an educational endeavor should not be limited by Husband. *Hutchings v. Hutchings,* 2011 OK 17, 250 P.3d 324, 328, n. 10 ("The wife's choice of an educational endeavor should not be limited to the pursuit of a nursing degree, as chosen by the husband, where her unequivocal testimony was that she did not want to be a nurse."). We find the record does not support Husband's claim that the support alimony award is clearly contrary to the weight of the evidence, and in light of all the facts, we affirm the trial court's award of support alimony.

## V. Child Support

¶ 45 In his Reply Brief,[53] Husband states that the trial court did not "properly attribute a sufficient income to [Wife]" for purposes of the child support calculation. He asserts in his Brief–in–Chief that the trial court should have imputed a "realistic salary to [Wife] and required her to provide for her own support while attending school." [54]

53. Husband's Reply Brief, p. 7.

54. Husband's Brief–in–Chief, Proposition III, second page.

¶ 46 "All child support shall be computed as a percentage of the combined gross income of both parents." Title 43 O.S.2011 § 118D (A). Title 43 O.S.2011 § 118B (C) provides, in pertinent part:

1. For purposes of computing gross income of the parents, gross Income shall include for each parent whichever is the most Equitable of:

a. all actual monthly income . . . ,

b. the average of the gross monthly income for the time actually employed during the previous three (3) years,

c. the minimum wage paid for a forty-hour week, or

d. gross monthly income imputed as set forth in subsection D of this section.

Wife testified her only income was $243 a month from the VA, for purposes of child support, and the trial court chose to impute to her, in addition, a minimum wage job salary for a forty-hour week, notwithstanding her unemployment.

¶ 47 Child support proceedings are matters of equitable cognizance. Matters relating to child support are addressed to the sound legal discretion of the trial court and will not be reversed absent a showing of abuse of discretion or that the decision is clearly contrary to the weight of the evidence. *Merritt v. Merritt,* 2003 OK 68, 73 P.3d 878.

¶ 48 Under the specific facts and circumstances of this case, we cannot say the trial court's computation of Husband's income, attribution of income to Wife, or calculation of the child support is clearly against the weight of the evidence. We affirm the trial court's child support computation.

### VI. Supervised Visitation

¶ 49 Husband asserts the trial court erred when it required "without request from any party, that [he] enjoy only supervised visitation with his children." [55] He also asserts that he had no opportunity to address the trial court's finding as to his mental health and emotional status that led to the trial court's requirement.

¶ 50 In the Decree, the trial court stated:

The demeanor of [Husband] during the multiple hearings evidenced to the Court an emotional instability which necessitates professional visitation supervision. Continuing refusal to obey a court order alone might not support such a requirement but when considered in light of his West Point training to follow orders, his demeanor and his emotional instability, it was unavoidably clear that the safety and well-being of these minor children required professional supervision of their time with [Husband]. Whether this instability was the result of his military service or something else was never addressed.

Therefore, this Court finds that sole custody of the minor children is hereby granted to [Wife], subject to the professionally supervised visitation rights of [Husband] as set forth below:

(a.) [Husband] is granted professionally supervised visitation with the minor children for the protection of the safety of the minor children due to his emotional instability and admitted, continuing refusal to obey court orders regarding the minor children;

(b.) [Husband] may visit with the minor children when he is in [Wife's] current State of residence (currently Pennsylvania) or whenever the minor children will be in Oklahoma. All [Husband's] visits with the minor children must be arranged at times which will not conflict with [Wife's] or children's classes and will allow professional supervision of [Husband's] time with the minor children. Due to [Husband's] need for professionally supervised visitation, no overnight visits are safe or in the minor children's best interest.

(c.) Any costs attendant to professionally supervised visitation by [Husband] with the minor children shall be borne by [Husband] which gives him control of this expense.

¶ 51 Neither parent argues the other is unfit, and Wife did not request or even mention

---

55. Husband's Brief–in–Chief, Proposition IV.

supervised visitation at trial. In fact, Wife testified that she thinks "it's most sensible and the best for the children and everyone involved for [Husband] to fly to Pittsburg to be with them for shorter visits. And then for any visit that's ... a week or more ... that meeting in Tennessee is convenient for both of us and then the children visit with him in Oklahoma." [56] When asked how frequently she would be willing for Husband to visit the children in Pittsburg, she responded, "[a]s often as he can." [57] The following exchange took place on cross-examination of Wife:

Q To your knowledge, [Husband has] never been charged with physical abuse, has he?

A No.

Q Of anyone, right?

A Not that I know of.

Q Never been physically abusive toward you?

A No.

Q Never been physically abusive toward his children?

A No.

Q He doesn't use drugs?

A Not that I know of, no.

Q And doesn't have a drinking problem, does he?

A Not that I know of, no.

Q Loves his children, right?

A Yes.

Q His children love him very much, right?

A They do.

Q They miss him, don't they?

A They do.[58]

¶ 52 At trial, there was no request for, or mention of, supervised visitation by either party; therefore, Husband had no opportunity to be heard as to the propriety of, or the basis for, such limitation on his visitation with his children.[59] The record does not reflect any comments by the trial court during the trial regarding supervision. Nor does the record reflect any expert testimony, testimony from a guardian ad litem, investigator, or from any other witness in support of supervised visitation.

¶ 53 A trial court has wide discretion in entering visitation orders. "An appellate court may not disturb a trial court's visitation order absent an abuse of discretion or a finding that the decision is clearly contrary to the weight of the evidence. In every visitation order, the paramount consideration is the best interests of the child." *Been v. Been,* 2007 OK CIV APP 31, ¶ 13, 158 P.3d 491, 494 (citation omitted). When evaluating a parent's behavior in regard to visitation, "[t]he determinative factor ... must be *the effect of the questioned behavior on the welfare of the child[ren]." Gorham v. Gorham,* 1984 OK 90, ¶ 14, 692 P.2d 1375, 1378 (emphasis added).[60]

---

**56.** Sept. Tr., Vol. I, p. 25.

**57.** *Id.* She also answered "[y]es," when asked if she was "willing to do whatever is necessary to make [Husband's visitation] happen." Dec. Tr., p. 21.

**58.** Sept. Tr., Vol. I, pp. 28–29.

**59.** *See Malone v. Malone,* 1979 OK 21, ¶ 4, 591 P.2d 296, 298, wherein on appeal of a custody modification order, the trial court relied, in part, upon a home study report not presented in open court. Although not the situation in the instant case, the Oklahoma Supreme Court did note the importance of due process, particularly when the fundamental rights inherent in parenting are involved: "Due process requires an orderly proceeding adapted to the case in which the parties have an opportunity to be heard, and to defend, enforce and protect their rights." The natural right of a divorced parent to visit his child, where the child's custody is awarded to the other parent, should not be taken from him unless the evidence conclusively shows that, by his conduct, he has forfeited his right of access to the child. *In the Matter of McMenamin,* 1957 OK 67, ¶ 9, 310 P.2d 381, 383; *Craig v. Craig,* 2011 OK 27, ¶ 15, 253 P.3d 57, 61.

**60.** *See also Gamble v. Gamble,* 1970 OK 150, 477 P.2d 383, in which the Oklahoma Supreme Court considered an appeal from a divorce decree in which the wife was awarded custody and the husband, visitation. The wife appealed, arguing that the husband should not be allowed unsupervised visitation with the couple's youngest child, three years old. The husband admitted that on one occasion he had changed babysitters for the child so that the wife would not know where her child was, that he had the child baptized without informing the wife, and that he told the child his

¶ 54 The trial court observed Husband's demeanor and concluded it evidenced an "emotional instability" that necessitated "professional supervised visitation." If the trial court became concerned about "the protection of the safety of the children" because of Husband's demeanor "in the multiple hearings," due process requires that the trial court should have informed the parties of such concern and afforded Husband and Wife the opportunity to be heard on this issue before imposing the unsolicited requirement of professionally-supervised visitation. Therefore, we find the trial court abused its discretion and modify the Decree to exclude the requirement, and all references to it, that Husband's visitation with his children be supervised.

## VII. Attorney Fees

¶ 55 Title 43 O.S.2011 § 110(D) provides that "[u]pon granting a decree of dissolution of marriage, annulment of a marriage, or legal separation, the court may require either party to pay such reasonable expenses of the other as may be just and proper under the circumstances." The decision as to whether to award attorney fees in a divorce action is within the discretion of the court and involves judicial balancing of the equities. *Barnett v. Barnett*, 1996 OK 60, ¶¶ 14–15, 917 P.2d 473, 477–478. Only if the trial court made a clearly erroneous conclusion and judgment against reason and evidence will the award be reversed. *Broadwater v. Courtney*, 1991 OK 39, ¶ 7, 809 P.2d 1310, 1312. As this Court stated in *Finger v. Finger*, 1996 OK CIV APP 91, ¶ 14, 923 P.2d 1195, 1197–1198:

In considering what is just and proper under the circumstances, the court in the exercise of its discretion should consider the totality of circumstances leading up to, and including, the subsequent action for which expenses and fees are being sought. Such circumstances should include, but not be limited to: ... whether one party's behavior demonstrated a priority of self-interest over the best interests of the child or children; whether either party unnecessarily complicated or delayed the proceedings, or made the subsequent litigation more vexatious than it needed to be; and finally, the means and property of the respective parties.

In the trial court's May 27, 2010 attorney fee and cost order, the trial court found that based upon Husband's refusal to pay the debts allocated to him in the Decree or any support alimony and Wife's disadvantaged position regarding employment opportunities, the balancing of the judicial equities weighs in Wife's favor.

¶ 56 Husband asserts the trial court's award of attorney fees to Wife is simply to "punish" him. Wife testified to the "further financial crippling" that the trial court found, stating that she and the children were still living with her parents, that she was finishing her MBA degree, and was unemployed.[61] Further, post-decree, Husband failed to pay Wife her share of the marital home equity, the support alimony as ordered, and failed to pay the marital home expenses and mortgages as ordered.[62] Wife had not sent Husband the child care receipts to pay as he was ordered because it seemed futile in the face of his refusal to make other Decree-mandated payments.

¶ 57 The trial court's attorney fee award reflects Wife's testimony. The record does not support a reversal based on a clearly erroneous conclusion and judgment against

mother was possessed by the devil. *Gamble* at ¶ 24, 477 P.2d at 388. In addition, the record contained a report from a psychiatrist who had evaluated the husband and who concluded that the child might be affected by continued contact with the husband in that the husband's fondness for the boy was of "an abnormal character." The physician concluded that continuation of a relationship was a "threat to the child's emotional well-being" and that "one should consider the advisability of visitation privileges by the father only in the presence of a third acceptable party."

*Gamble* at ¶ 10, 477 P.2d at 385 (emphasis omitted). Even in the face of the husband's admitted conduct, a psychiatrist's report, and *an opportunity for each party to be heard on the issue of supervised visitation*, the trial court did not require the husband's visitation to be supervised and the Oklahoma Supreme Court agreed.

**61.** Transcript of hearing on attorney fees, April 27, 2010, p. 6.

**62.** *Id.* at pp. 9–10.

reason and evidence. We affirm the trial court's award of attorney fees to Wife.

### VIII. Appeal-related Attorney Fees

¶ 58 Wife requests, in her Answer Brief, an award of appeal-related attorney fees, which Husband opposes. Wife's application for fees is premised upon her assertion that she did not receive a substantial property award and that Husband did not reasonably litigate this case, "instead acting capriciously and unduly protracting the litigation...."[63] She also asserts that "Husband had the ability to pay even though he repeatedly chose to spend his money on persons and things other than those ordered by the court."[64]

¶ 59 The statutes authorize a court to require a party to "pay such reasonable expenses of the other as may be just and proper under the circumstances." 43 O.S. 2011 § 110(D). "Appeal-related attorney fees are recoverable when there is statutory authority for the award of attorney fees in the trial court." *Daniel v. Daniel*, 2001 OK 117, ¶ 24, 42 P.3d 863, 872 (footnote omitted).

¶ 60 The Oklahoma Supreme Court, in *Thielenhaus v. Thielenhaus*, 1995 OK 5, 890 P.2d 925, provides guidance on the issue of attorney fees in divorce proceedings. "Counsel-fee allowances, which never depend on one's status as prevailing party in the case, must be granted only to that litigant who qualifies for the benefit through the process of a judicial balancing of the equities." *Thielenhaus* at ¶ 19, 890 P.2d at 935 (footnote and emphasis omitted). The factors considered in *Thielenhaus* were the property and support alimony received by the wife.

An award of attorney fees does not depend on any one factor such as status as the prevailing party or the financial means of a party. In considering what is just and proper under the circumstances, the court in the exercise of its discretion should consider the totality of circumstances leading up to, and including, the subsequent action for which expenses and fees are being sought. Such circumstances should include, but not be limited to: the outcome of the action; whether either party unnecessarily complicated or delayed the proceedings, or made the subsequent litigation more vexatious than it needed to be; and finally, the means and property of the respective parties. *Finger v. Finger,* 1996 OK CIV APP 91, ¶ 14, 923 P.2d 1195, 1197–1198.

*Husband v. Husband,* 2010 OK CIV APP 42, ¶ 35, 233 P.3d 383, 389–390. *See also, Kerby v. Kerby,* 2002 OK 91, ¶ 13, 60 P.3d 1038, 1042 (citations omitted) ("An award of appeal-related attorney fees is not dependant on prevailing party status but whether equities warrant the award. Relevant factors are the financial means of a party and whether one party's claims are frivolous.")

¶ 61 Husband does not deny an ability to pay, but argues that his appeal was brought in good faith. We cannot find Husband's appeal is frivolous. The record on appeal, however, contains evidence of a disparity in the parties' incomes and net worth, established at trial. Based on our review of the record, therefore, we find the equities in favor of Wife and grant her request for appeal-related attorney fees. This issue is remanded to the trial court for determination of a reasonable amount of appeal-related attorney fees. 12 O.S.2011 § 696.4(C).

### CONCLUSION

¶ 62 Based on our review of the record and applicable law, we find the trial court abused its discretion by ordering Husband's visitation to be professionally supervised. We affirm the Decree in all other respects, however, we modify the Decree to exclude the supervised visitation requirement and all references to supervision. We affirm the trial court's order granting attorney fees to Wife. We grant Wife's request for appeal-related fees and remand this matter to the trial court for determination of a reasonable amount of appeal-related attorney fees.

---

**63.** Wife's Answer Brief, p. 27.

**64.** *Id.*

¶ 63 **AFFIRMED AS MODIFIED AND REMANDED WITH DIRECTIONS.**

FISCHER, V.C.J., and WISEMAN, J., concur.